[Cite as *State v. Williams*, 2011-Ohio-4488.]

STATE OF OHIO            )            IN THE COURT OF APPEALS
                        )ss:          NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT        )

STATE OF OHIO

     Appellee

     v.

DANEVIN W. WILLIAMS

     Appellant
C.A. No.     25286


APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     CR 07-12-4185

DECISION AND JOURNAL ENTRY

Dated: September 7, 2011


WHITMORE, Judge.

{¶1}  Defendant-Appellant, Danevin Williams, appeals from his convictions in the Summit County Court of Common Pleas.  This Court affirms.

I

{¶2}  On December 12, 2007, police executed a search of the home located at 1574 Manchester Road in Akron.  Inside, they found Williams and three others, along with crack cocaine, powder cocaine, two digital scales, a razor blade, sandwich baggies, marijuana roaches, a marijuana grinder, and a large box containing marijuana leaves.  Williams was subsequently indicted on the following charges: trafficking in cocaine, in violation of R.C. 2925.03(A)(C)(4);

two counts of possession of cocaine, in violation of R.C. 2925.11(A)(C)(4); possession of criminal tools, in violation of R.C. 2923.24; and possession of marijuana, in violation of R.C. 2925.11(A)(C)(3). Following a trial, the jury found Williams guilty of two counts of cocaine possession, but acquitted him of the remaining charges. Williams was sentenced to thirty months in prison, all of which was suspended, and he was placed on two years of community control.

{¶3} Williams has timely appealed from his conviction and asserts the following assignments of error for our review.

II

Assignment of Error Number One

"THE TRIAL COURT ERRED IN DENYING APPELLANT'S CRIM.R. 29 MOTION AS THE STATE PRESENTED INSUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION."

Assignment of Error Number Two

"THE JURY CREATED A MANIFEST MISCARRIAGE OF JUSTICE AS THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶4} In his captioned assignments of error, Williams asserts that there was insufficient evidence upon which to sustain his convictions and that his convictions are against the manifest weight of the evidence. We disagree.

{¶5} Initially, we note that Williams does not dispute that the police found cocaine at his residence when they conducted their search. Rather, he disputes whether there was any credible evidence presented by the State at trial to support its position that the cocaine found in the home belonged to him. Essentially, he argues that his testimony on this issue is more credible than the testimony of the State's witnesses. Because his argument sounds solely in terms of credibility, it is a challenge to the weight of the evidence, not whether there was

sufficient evidence to sustain his convictions. See *State v. Jones*, 9th Dist. No. 24776, 2010-Ohio-351, at ¶11. Thus, we fashion our analysis accordingly.

{¶6}   When considering a manifest weight argument, this Court:

"[M]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.  The discretionary power to grant a new trial should be exercised only in exceptional cases where the evidence weighs heavily against the conviction." *State v. Otten* (1986), 33 Ohio App.3d 339, 340.

A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Id.

{¶7}   R.C. 2925.11(A) provides that "[n]o person shall knowingly obtain, possess, or use a controlled substance."  "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."  R.C. 2901.22(B).  Cocaine is considered a controlled substance under R.C. 3719.41, Schedule II(A)(4).  "If the amount of [cocaine] involved *** equals or exceeds one gram but is less than five grams" a person is guilty of fourth-degree felony drug possession. R.C. 2925.11(C)(4)(b).  "Possession may be actual or constructive." *State v. Kobi* (1997), 122 Ohio App.3d 160, 174.  Constructive possession occurs when a person knowingly exercises dominion or control over an item, even without physically possessing it. *State v. Hankerson* (1982), 70 Ohio St.2d 87, syllabus.  Circumstantial evidence is sufficient to support the elements of constructive possession. *State v. Lamb*, 9th Dist. No. 23418, 2007-Ohio-5107, at ¶12, citing

*State v. Jenks* (1991), 61 Ohio St.3d 259, 272-73. Evidence that a person "owns, leases, or occupies the premise along with [his or her] presence or proximity to the contraband, can be considered in establishing constructive possession." *State v. Owens*, 9th Dist. No. 23267, 2007-Ohio-49, at ¶23. Moreover, "the Ohio Supreme Court has held that knowledge of contraband on one's property is sufficient to show constructive possession." Id.

{¶8} At trial, Detective Chris Carney testified that he was the first officer in the house when police executed their search. Upon entering the front door into the living room, he found Williams and a woman engaged in "some type of transaction" whereby he believed that Williams was selling something to the woman. The woman fled to one of the back bedrooms and Detective Carney ran after her, after pushing Williams to the floor for another officer to secure him. Detective Carney admitted, however, that police did not recover any drugs or money from either the woman or Williams' person.

{¶9} Detective David Haverstick testified that in their search of the living room, police recovered a jar of marijuana, a digital scale, a cocaine snorting kit with a small amount of cocaine contained in it, and other drug paraphernalia, including a box of sandwich baggies and several hemostats. In the hallway closet outside of the bedrooms, police found a plate which held powder cocaine and a razor, along with a prescription drug bottle containing approximately 1.6 grams of crack cocaine. In the kitchen, police found more marijuana and another digital scale, in addition to cocaine residue on a glass test tube and a box full of marijuana leaves. Police also found several marijuana roaches, a marijuana grinder, and a glass pipe in one of the bedrooms.

{¶10} Detective Timothy Harvey testified that after police recovered the powder and crack cocaine from the closet in the hallway, Williams told police something to the effect of

"[t]hat's all there is. There isn't any more." Williams also told Detective Harvey that he was the only person who was living at the house, and police found mail addressed to Williams at that location while searching the living room. Detective Harvey further testified that only one of the bedrooms looked lived in, as there was a television, a dresser, a bed, and two different breathing machines located in it, while the second bedroom was nearly empty, with only an air mattress on the floor. When Detective Harvey was questioning Williams later that evening at the police station, he noted that Williams had asthma and seemed to be breathing heavily. Detective Harvey asked Williams if he would need either of the breathing machines from his bedroom while he was in jail, but Williams declined, stating that he would "be all right tonight" without them. Detective Harvey further stated that he searched the basement of the house and did not recall seeing anything of any evidentiary value in that area, though he could not specifically recall whether or not there was a bed there.

{¶11} The State also introduced the tape of a call Williams made from jail to Tara Parsons, one of the women who was at the house when police conducted their search. In the course of their conversation, Williams asked Parsons whether the police "f[ou]nd that money" and she told him "no." She also explained that police "didn't find the rest" but "only found the one sitting out [in the closet]." Parsons also told Williams that police had found the glass pipe and marijuana roaches in his bedroom. Williams went on to discuss how he thought that "somebody sold [him] out[,]" but when the two discussed the charges pending against him, he stated that "all in all, [it was] not too bad[.]"

{¶12} John Cruse, a friend of Williams who was out of town when Williams was arrested, testified in Williams' defense. Cruse stated the two were like brothers given that they had been friends for nearly twenty-two years and had lived together nearly all of that time.

Cruse stated the he was the person that had leased the house and that Williams was living there with him. Cruse further stated that, because of Williams' asthma and breathing problems, Williams' bedroom was in the basement of the house and he rarely came up to the main floor. Cruse testified that the bedroom on the main floor containing the two breathing machines was his bedroom, not Williams'. He further stated that one of the breathing machines in his bedroom had been left in the house when he moved in, and that he let Williams leave a second breathing machine in his bedroom in case Williams was short of breath while he was upstairs and could not make it back down to his bedroom in the basement. Cruse admitted that he smoked marijuana and claimed the marijuana found in the house, including the roaches found in the bedroom, was his. He denied, however, being aware that there was ever cocaine or cocaine-related drug paraphernalia in the house or having any knowledge that Williams had ever used cocaine. Upon cross examination, Cruse testified that he was not aware that Williams had previous cocaine-related convictions in both 1993 and 2003.

{¶13} Williams testified in his own defense and denied making any statements to Detective Harvey as to whether there was any more cocaine in the house, and instead, testified that Detective Harvey was lying. He corroborated Cruse's testimony that he lived in the basement of the house and further testified that he did not use the hallway closet upstairs where the cocaine was found, as he kept all his personal items in the basement in his bedroom.

{¶14} Williams indicated that, because of his asthma and other health problems, he would be unable to smoke any kind of substance, including cocaine, because he would have difficulty breathing as a result. He explained that he used one breathing machine throughout the night to aid with his sleep apnea, while the other machine was used to help him breathe during an asthma attack, but asserted that both of his machines were in his room in the basement, not

upstairs. Williams indicated that during his call from jail, he asked Parsons about the money he had hidden because he was getting ready to move out of the house and needed the money in order to relocate. He further explained that when he said he had been "sold out," he really meant that he had been "set up" to take the blame for the drug use of others who were at the house that day.

{¶15} Based on the foregoing evidence, we cannot conclude that the jury lost its way in convicting Williams of possession of cocaine. Williams informed police that he was the only person residing in the house and their search of the premises revealed the same, with only one bedroom appearing occupied. Police found cocaine in the hallway closet, in close proximity to where Williams was found and next to his bedroom. *Owens* at ¶23. Williams had knowledge that there was cocaine in the house, as he told police that there was no more other than what they had found in the closet. Id. See, also, *Lamb* at ¶16 (affirming a manifest weight challenge to a possession of marijuana conviction based, in part, on the fact that the appellant was the sole resident of the apartment and the marijuana was found in a couch near where appellant slept). Though Williams and Cruse testified that Williams did not live in the upstairs bedroom near where the cocaine was found, the jury was free to discredit their testimony in the face of other evidence presented. *State v. Crowe*, 9th Dist. No. 04CA0098-M, 2005-Ohio-4082, at ¶22. Accordingly, Williams' convictions for cocaine possession are not against the manifest weight of the evidence. Williams' two assignments of error are overruled.

III

{¶16} Williams' assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETH WHITMORE
FOR THE COURT

MOORE, J.
CARR, P.J.
CONCUR

APPEARANCES:

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellant.

MARTHA HOM, for Appellee.