[Cite as *State v. Henry*, 2017-Ohio-5730.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. W. Scott Gwin, P. J. |
| Plaintiff-Appellee | Hon. John W. Wise, J.<br>Hon. Earle E. Wise, Jr., J. |
| -vs- | |
| | Case No. 2016 AP 05 0030 |
| EARL HENRY, JR. | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING: Criminal Appeal from the Court of Common Pleas, Case No. 2015 CR 04 0104

JUDGMENT: Affirmed

DATE OF JUDGMENT ENTRY: July 3, 2017

APPEARANCES:

For Plaintiff-Appellee

MICHAEL J. ERNEST
ASSISTANT PROSECUTOR
125 East High Avenue
New Philadelphia, Ohio 44663

For Defendant-Appellant

BRANDON J. HENDERSON
JUSTIN M. WEATHERLY
HENDERSON, MOKHTARI
& WEATHERLY
3238 Lorain Avenue
Cleveland, Ohio 44113

*Wise, John, J.*

{¶1}    Appellant Earl L. Henry appeals his conviction, in the Court of Common Pleas, Tuscarawas County, on three counts of trafficking in cocaine, resulting from a series of controlled drug purchases. Appellee is the State of Ohio. The relevant facts leading to this appeal are as follows.

### First Controlled Buy – 9/11/14

{¶2}    On September 11, 2014, James Hart, a confidential informant working with the Tuscarawas County Sheriff's Office and the LEAD Drug Task Force, met with an unwitting accomplice, James Dunaway, at a grocery store parking lot in Uhrichsville, Ohio. Tr. at 158. Hart, equipped with audio and video recording equipment, got into Dunaway's vehicle and provided him with the $125.00 in marked cash for the purpose of having Dunaway purchase some cocaine for him. Tr. at 159. Dunaway and Hart then travelled in Dunaway's vehicle to Appellant Henry's residence in Uhrichsville. Tr. at 159. Dunaway exited the vehicle with the $125.00 cash, and while Hart waited, Dunaway went into appellant's house for a time, and returned to the car. According to Hart, he and Dunaway then left the immediate area and "got down the road a little bit," at which time Dunaway handed him a quantity of cocaine. Tr. at 160. Dunaway then dropped Hart off, and Hart went to a local park to wait on Detective Phil Valdez of the Tuscarawas County Sheriff's Office, who was coordinating the controlled buy.

### Second Controlled Buy – 9/15/14

{¶3}    On September 15, 2014, James Hart, the CI, again met James Dunaway, this time at a discount store parking lot in Uhrichsville. Tr. at 199. Hart, equipped with recording devices, again got into the car and gave Dunaway $125.00 in marked cash to

be used for purchasing cocaine. Tr. at 164. According to Hart, Dunaway drove to appellant's residence, went inside for a while, and came back to the car where Hart was waiting. Hart then obtained a quantity of cocaine from Dunaway. Tr. at 166. Hart thereafter was dropped off, and he then met with Det. Valdez at a nearby park.

### Third Controlled Buy – 10/14/14

{¶4} On October 14, 2014, Det. Valdez, working undercover, picked up Hart and Dunaway in a different vehicle and travelled to appellant's residence, as Dunaway's car was broken down at the time. Tr. at 168, 207-208. Dunaway received cash from Valdez, again went in appellant's house, and returned with cocaine, which he had stashed under his hat. Dunaway eventually handed the cocaine to Det. Valdez. Tr. at 246. An audio/video recording of the events inside the car was once again obtained.

### Indictment and Trial

{¶5} On April 7, 2015, appellant was indicted by the Tuscarawas County Grand Jury on four counts of trafficking in cocaine, R.C. 2925.03(A)(1) and R.C. 2925.03(C)(4)(a), all felonies of the fifth degree.

{¶6} The matter proceeded to a jury trial on April 5 and 6, 2016. Both Hart and Det. Valdez were called as witnesses by the State. Dunaway testified at the trial after being designated a court's witness. Appellant unsuccessfully moved for acquittal at the close of the State's case. No defense witnesses were called.

{¶7} Following deliberations, the jury found appellant guilty on the first, second, and third counts of the indictment.[1]

---

[1] At the commencement of the trial, the State of Ohio had dismissed Count Four of the indictment.

{¶8} On May 16, 2016, appellant was sentenced *inter alia* to three years of community control, ordered to serve thirty days of local incarceration, and complete a treatment program at the Stark Regional Community Correction Center, with thirty months of prison time reserved.

{¶9} On May 23, 2016, appellant filed a notice of appeal. He herein raises the following two Assignments of Error:

{¶10} "I. THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW TO SUPPORT A FINDING BEYOND A RESONABLE [SIC] DOUBT THAT THE APPELLANT WAS TRAFFICKING IN COCAINE AND THEREFORE THE TRIAL COURT ERRED IN DENYING DEFENDANT-APPELLANT'S MOTION FOR AQUITTAL [SIC].

{¶11} "II. APPELLANT'S CONVICTIONS FOR TRAFFICKING COCAINE WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

I.

{¶12} In his First Assignment of Error, appellant argues his three-count drug trafficking conviction was not supported by sufficient evidence. We disagree.

{¶13} In reviewing a claim of insufficient evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

{¶14} Appellant herein was convicted of three counts of trafficking in drugs. R.C. 2925.03(A)(1) sets forth the essential elements of the offense of trafficking in drugs: "No person shall knowingly sell or offer to sell a controlled substance or a controlled substance

analog." *See State v. Moore,* 5[th] Dist. Stark No. 2008-CA-00228, 2009-Ohio-4958, ¶ 12. Cocaine is considered a controlled substance under R.C. 3719.41, Schedule II (A)(4). *See State v. Williams*, 9th Dist. Summit No. 25286, 2011-Ohio-4488, ¶ 7.

{¶15} In the case *sub judice,* appellant does not dispute that the drugs involved in the controlled buys were cocaine. Thus, appellant's present focus is solely on whether the State sufficiently proved that the unwitting buyer, James Dunaway, purchased the cocaine from him. *See* Appellant's Brief at 9.

{¶16} The record before us reveals CI Hart's testimony that he had contacted Detective Valdez and originally offered to participate in a controlled buy of cocaine from James Dunaway. Tr. at 176-177. Hart recalled that at the time he approached the detective about assisting as a CI, Hart was unfamiliar with Appellant Henry. *Id.* However, Detective Valdez explained to Hart that the target of any controlled buys would actually be the Appellant Henry, not Dunaway. Tr. at 178.

{¶17} According to Hart, the first witness called at trial, only Dunaway entered appellant's residence during the controlled buys. Tr. at 182, 186-188. Hart conceded that he never actually observed Dunaway give appellant money in exchange for drugs. Tr. at 189. Hart also noted that he had no idea where Dunaway got the cocaine that he would later give him in the car. Tr. at 186, 189. Hart testified he did not know who was in appellant's residence during the controlled buys in question. *Id.* Hart recalled that Dunaway was never searched by police officers before any of the buys, and Hart did not know whether or not Dunaway already had cocaine on his person before going inside appellant's house. Tr. at 183-184, 186, 190.

{¶18} Dunaway was the second witness at trial, although due to changes in his anticipated testimony as revealed to the prosecutor on the morning of day two of the trial, he was called as a court's witness under Evid.R. 614. *See* Tr. at 194. Although Dunaway had previously implicated appellant as his supplier during an interview with Det. Valdez, Dunaway testified at trial that he did not obtain the cocaine from appellant during the three incidents at issue; instead, he claimed to have had it on his person the entire time. He testified that when he went into appellant's house, they merely talked briefly or discussed fishing trips. Tr. at 206. Dunaway explained that he took Hart to appellant's residence to throw off Hart as to the actual source of the cocaine, and on the third occasion allowed Det. Valdez to drive him there because he needed a ride due to his car's disrepair. *See* Tr. at 209, 233-234.

{¶19} Detective Valdez, the final trial witness, testified that before each controlled buy, he outfitted Hart with audio/video surveillance equipment which he would monitor in real time during the buy. Tr. at 239-241. He also recalled that he gave Hart marked currency with which to purchase the cocaine and patted him before and after each controlled buy. Tr. at 241, 244, 247. He noted, however, that he never subjected Dunaway to the same pat-downs. Tr. at 255. Also, because Dunaway was not wired, Valdez never had an opportunity to see or hear what was taking place in appellant's house during the buys. Tr. at 256. Detective Valdez also testified concerning the follow-up search of appellant's residence on or about November 5, 2014. Tr. at 248.[2] Det. Valdez recounted that said search revealed no cocaine nor the marked cash used in the controlled buys.

---

[2] The final incident in the series of buys, set forth in Count Four of the indictment, which was ultimately dismissed, involved acts alleged to have occurred on October 28, 2014.

Tr. at 249. Furthermore, Dunaway's home was never searched by law enforcement officers. Tr. at 259.

{¶20} In addition, as noted in our recitation of facts, the jury saw audio/video recordings made by the CI, Hart. In the first video, Dunaway leaves the vehicle, goes to appellant's house and returns shortly thereafter to the vehicle. Dunaway can be heard telling Hart not to "pull out" any of the product until later. *See* State's Exhibit A. In the second video, Dunaway again leaves the vehicle, goes to appellant's house, returns to the vehicle and provides cocaine to Hart. *See* State's Exhibit B. In the third video, Dunaway again leaves the vehicle, goes to appellant's house, returns to the vehicle and subsequently provides cocaine to Det. Valdez. *See* State's Exhibit C.

{¶21} Thus, with some slight variation, the jury in the case *sub judice*, was presented with evidence of three arranged drug buys in which the CI or the undercover detective provided an unwitting accomplice, Dunaway, with $125.00 in advance each time to go into appellant's residence, followed by the return of the accomplice with illegal drugs. While the physical transactions took place outside of the range of the audio/visual recordings, the accomplice can be heard telling the CI after at least one of the buys not to examine the substance in the vicinity of appellant's house and at one point warns him that appellant has a gun. In addition, although Dunaway changed his story on the stand, he implicated appellant as his supplier when first interviewed by detectives.

{¶22} We note Ohio law recognizes that circumstantial evidence is sufficient to prove the essential elements in a criminal case. *State v. Willey,* 5th Dist. Guernsey No. 98 CA 6, 1999 WL 3962, citing *State v. Hopfer* (1996), 112 Ohio App.3d 521, 558, 679 N.E.2d 321. Furthermore, "[b]oth circumstantial and direct evidence have the same

probative value, and in some instances, certain facts can only be established by circumstantial evidence." *State v. Crutchfield*, 12th Dist. Warren No. CA2005-11-121, 2006-Ohio-6549, ¶ 20, citing *State v. Mobus,* 12th Dist. Butler No. CA2005-01-004, 2005-Ohio-6164, ¶ 51. While we acknowledge the challenges presented by the utilization of an unwitting intermediary to effectuate controlled drug buys, in the present case, upon review of the evidence before us in a light most favorable to the prosecution, we hold reasonable triers of fact could have found, beyond a reasonable doubt, that appellant committed the three offenses of cocaine trafficking.

**{¶23}** Appellant's First Assignment of Error is therefore overruled.

II.

**{¶24}** In his Second Assignment of Error, appellant maintains his three-count conviction was against the manifest weight of the evidence. We disagree.

**{¶25}** Our standard of review on a manifest weight challenge to a criminal conviction is stated as follows: "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. *See*, *also*, *State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175, 485 N.E.2d 717.

**{¶26}** Appellant again asserts his claims of weaknesses in the State's case against him. In sum, he urges that because Dunaway, as an unwitting participant in the

controlled buy operations, was not wired for recording or searched before and after entry into appellant's house, the jurors were not provided with corroborating evidence that appellant was the seller. Appellant reiterates that no indicators of drug trafficking or the marked bills were found in the subsequent search of appellant's residence. Appellant also again emphasizes that Dunaway's person and home were never searched, and he maintains that Dunaway's implication of appellant to Det. Valdez was unreliable, as he feared the charges he would be facing himself.

{¶27} However, we surmise that the jurors, who were in the best position to gauge Dunaway's credibility, rejected Dunaway's strained portrayal of the drug purchases in question as a form of a ruse he repeated three times. The jurors also apparently rejected Dunaway's claims of merely wanting to visit with appellant and his supposed use of appellant as a cover to protect his actual supplier. Upon review, we find the jury did not clearly lose its way and create a manifest miscarriage of justice requiring that appellant's convictions for drug trafficking be reversed and a new trial ordered.

{¶28} Appellant's Second Assignment of Error is therefore overruled.

{¶29} For the foregoing reasons, the judgment of the Court of Common Pleas, Tuscarawas County, Ohio, is hereby affirmed.

By: Wise, John, J.
Gwin, P. J., and
Wise, Earle, J., concur.

JWW/d 0615