[Cite as *State v. Pierson*, 2022-Ohio-4140.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No.    21CA011793 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| JOHN PIERSON | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant | CASE No.    17CR097577 |

DECISION AND JOURNAL ENTRY

Dated: November 21, 2022

SUTTON, Judge.

**{¶1}** Defendant-Appellant John Pierson appeals the judgment of the Lorain County Court of Common Pleas. For the reasons that follow, this Court affirms.

I.

**Relevant Background Information**

**{¶2}** This appeal arises from an anonymous tip made to the Lorain County Drug Task Force regarding a large outdoor marijuana grow at Mr. Pierson's property located at 18157 Station Road, Columbia Station, Ohio 44028. After performing surveillance of Mr. Pierson's property, including two flyovers, Detective Lonnie Dillon and Detective Craig Camp went to a neighboring home to get a better view of the northeast quadrant of Mr. Pierson's property. The neighbor, who was familiar with the property lines between his and Mr. Pierson's property, escorted the detectives to a spot where they could smell raw marijuana and see marijuana plants growing on Mr. Pierson's property.

{¶3} Detective Dillon then obtained a warrant to search the northeast quadrant of 18157 Station Road, Columbia Station, Ohio 44028. On the day the detectives executed the search warrant, no one was home at the Pierson property. However, while detectives were removing marijuana plants found on the property, Mr. Pierson's wife arrived home. Mrs. Pierson spoke with the detectives and denied any knowledge of marijuana plants on the property. Mrs. Pierson also consented to a search of the Pierson home and barn, and provided detectives with Mr. Pierson's contact information, and the contact information for Mr. Pierson's son. Detectives removed 244 marijuana plants from the Pierson property, along with a sump pump and a garbage bag containing 16 felt plant growth bags.

{¶4} In December 2017, a grand jury indicated Mr. Pierson on one count of Trafficking in Drugs, in violation of R.C. 2925.03(A)(2), a felony of the second degree; one count of Illegal Manufacture/Cultivation of Drugs, in violation of R.C. 2925.04(A), a felony of the second degree; one count of Possession of Drugs, in violation of R.C. 2925.11(A), a felony of the second degree; and one count of Possessing Criminal Tools, in violation of R.C. 2923.24(A), a felony of the fifth degree. Mr. Pierson entered a plea of not guilty to these charges.

{¶5} On July 25, 2019, Mr. Pierson moved to suppress the evidence seized at his property located at 18157 Station Road, Columbia Station, Ohio 44028. The State opposed Mr. Pierson's motion and the trial court held an evidentiary hearing on the matter. The trial court, in a decision journalized on April 9, 2020, denied Mr. Pierson's motion to suppress.

{¶6} A six-day jury trial commenced on June 10, 2021. Prior to trial, the State dismissed count one of the indictment, Trafficking in Drugs, in violation of R.C. 2925.03(A)(2). In its case-in-chief, the State called as witnesses (1) Detective Camp; (2) Elizabeth Doyle, a forensic scientist; (3) Detective James Larkin; and (4) Detective Dillion. Mr. Pierson also testified on his own behalf.

Following the State's case-in-chief, and at the close of his own case-in-chief, Mr. Pierson moved for acquittal pursuant to Crim.R. 29. The trial court denied both motions, and the matter was turned over to the jury for deliberation. The jury returned a verdict of not guilty to the charge of Illegal Manufacture/Cultivation of Drugs, and guilty to the charges of Possession of Drugs and Possessing Criminal Tools.

{¶7} The trial court sentenced Mr. Pierson to a mandatory six-year prison term for Possession of Drugs, and a nine-month prison term for Possessing Criminal Tools, to run concurrently. Additionally, the trial court imposed a $7,500.00 mandatory fine for Possession of Drugs.

{¶8} Mr. Pierson now appeals raising three assignments of error for our review.

II.

**ASSIGNMENT OF ERROR I**

**THE TRIAL COURT ERRED IN DENYING [MR. PIERSON'S] MOTION TO SUPPRESS EVIDENCE BASED ON A DETERMINATION THAT THERE WAS PROBABLE CAUSE IN THE AFFIDAVIT FOR THE ISSUANCE OF A SEARCH WARRANT.**

{¶9} In his first assignment of error, Mr. Pierson argues the trial court erred in denying his motion to suppress. Specifically, Mr. Pierson challenges whether probable cause for a search warrant existed where the affidavit "does not specify where the [marijuana] plants were observed to be."

{¶10} A motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.

> When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently

determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

(Internal citations omitted.) *Id.* "Accordingly, this Court grants deference to the [trial] court's findings of fact but conducts a de novo review of whether the court applied the appropriate legal standard to those facts." *State v. Snowberger*, 9th Dist. Summit No. 29853, 2022-Ohio-279, ¶ 5.

{¶11} "The Fourth Amendment to the United States Constitution provides that search warrants shall only issue 'upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.'" *State v. Corn*, 9th Dist. Lorain No. 20CA011686, 2021-Ohio-3444, ¶ 16. *Compare* Crim.R. 41(C) ("In the case of a search warrant, the affidavit shall name or describe the person to be searched or particularly describe the place to be searched, name or describe the property to be searched for and seized, state substantially the offense in relation thereto, and state the factual basis for the affiant's belief that such property is there located.")

{¶12} The Supreme Court of the United States has explained the standards that apply, respectively, to the magistrate/judge tasked with issuing a search warrant and to reviewing courts:

> The task of the issuing magistrate [or judge] is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, *there is a fair probability that contraband or evidence of a crime will be found in a particular place.*

(Emphasis added.) *Illinois v. Gates*, 462 U.S. 213, 238-239 (1983), quoting *Jones v. United States*, 362 U.S. 257, 271 (1960), overruled on other grounds *United States v. Salvucci*, 448 U.S. 83, 85 (1980); *see also State v. George*, 45 Ohio St.3d 325 (1989), paragraph one of the syllabus. "Like a trial court that rules on a motion to suppress, this Court must consider the totality of the circumstances." *Corn* at ¶ 17, citing *State v. Jones*, 143 Ohio St.3d 266, 2015-Ohio-483, ¶ 15. "We do so with reference to the four corners of the affidavit." *Id.*, citing *State v. Norris*, 9th Dist.

Wayne No. 05CA0081, 2006-Ohio-4022, ¶ 25, citing *State v. Fisher*, 9th Dist. Summit No. 22481, 2005-Ohio-5104, ¶ 7. Further:

> In reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant issued by a magistrate [or judge], neither a trial court nor an appellate court should substitute its judgment for that of the magistrate [or judge] by conducting a *de novo* determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant. *Rather, the duty of a reviewing court is simply to ensure that the magistrate [or judge] had a substantial basis for concluding that probable cause existed.*

(Emphasis added.) *George* at paragraph two of the syllabus. In doubtful or marginal scenarios, the [judge's] determination of probable cause should be afforded "great deference" by reviewing courts. *Id*. at paragraph two of the syllabus.

{¶13} Based upon the foregoing, the question then before this Court, in reviewing a motion to suppress that challenges probable cause for a search warrant, is whether the affidavit "provided a substantial basis for the [judge's] conclusion that there was a fair probability" that evidence would be found. (Emphasis omitted.) *George* at 330. "Probable cause means less evidence than would justify condemnation, so that only the 'probability, and not a prima facie showing, of criminal activity is the standard of probable cause.'" *State v. Eal*, 10th Dist. Franklin No. 11AP-460, 2012-Ohio-1373, ¶ 10, quoting *George* at 329.

{¶14} Here, in the affidavit in support of the search warrant, Detective Dillon, of the Lorain County Drug Task Force, averred as follows:

1. He has been employed as a law enforcement officer for 45 years.

2. In June 2017, the Lorain County Drug Task Force received an anonymous call regarding a "large outdoor grow of marijuana at 18157 Station Road, Columbia Station, Ohio 44028." Further, the anonymous caller "estimated there were approximately 100 plants."

3. Based upon this information, he began conducting surveillance of 18157 Station Road, Columbia Station, Ohio 44028. However, he "was unable to see the back of

the property from the road because there is a large dirt [mound] that is approximately ten feet from the roadway and is about six to seven feet high."

4. Two flyovers were also conducted of 18157 Station Road, Columbia Station, Ohio 44028. However, "the pilot was unable to state with certainty that the plants on the property were marijuana."

5. Further, although he participated in the second flyover, and saw plants located in the northeast quadrant of the property located at 18157 Station Road, Columbia Station, Ohio 44028, he was also "unable to state with 100% certainty that the plants were marijuana."

6. On September 11, 2017, he and Detective Camp "went to the neighbor's house immediately north of 18157 Station Road, Columbia Station, Ohio 44028." He then informed the neighbor "that [they] observed something of interest on the property located at 18157 Station Road, Columbia Station, Ohio 44028 and asked for permission to access the target's neighbor's property." The neighbors allowed access to their property, and he and Detective Camp "went to the area of the neighbor's property that was near the area of interest, specifically the northeast quadrant of 18157 Station Road, Columbia Station, Ohio 44028." In plain sight, he observed, based upon his training and experience, "numerous marijuana plants and smelled the odor of raw marijuana."

Based upon this information, Detective Dillon sought authorization to search the northeast quadrant of 18157 Station Road, Columbia Station, Ohio 44028, for "any marijuana plants, seeds or sprouts." Additionally, a photograph of the marijuana grow was attached to the affidavit.

{¶15} In denying Mr. Pierson's motion to suppress, the trial court reasoned, in relevant part:

* * *

In this case, although there is nothing that specifically says that [Detective] Dillon saw marijuana plants growing in the northeast quadrant of [Mr. Pierson's] property, other paragraphs in the affidavit make it clear that, No. 1, [Detective Dillion] is investigating regarding an issue about marijuana plants on [Mr. Pierson's] property. That [Detective Dillon] had done at least personally, two go-bys; one by car, one by plane. A third go-by by other officers in the same task force to determine whether, in fact, they could observe bushes of those sort. That, ultimately, when [Detective Dillion] was allowed onto the property next door, he observed that same area that he was raising concerns of [on Mr. Pierson's property], and that he believes there are marijuana plants contained on the property as a result of those observations.

And, so, from the [c]ourt's perspective, I believe that [the issuing judge] made proper inferences, that in [Detective Dillon's] paragraph 6, when he's referring to observing plants that were consistent with the prior anonymous tip, it was plants on [Mr. Pierson's] property at 18157 Station Road.

And, so, I find, ultimately, based upon that [inference], and based upon the totality of circumstances, I find that there was sufficient probable cause for [the judge] to issue the search warrant, looking only at the northeast quadrant of the exterior of the property of 18157 Station Road.

\* \* \*

But, even over and above that, I think, also, the State's argument that there was a good faith exception is also applicable with regard to this is a fair statement.

When I look at the affidavit that supported the search warrant, and certainly the language of the search warrant, I think a reasonable officer, when reviewing that, would not be concerned about whether the [judge] found sufficient probable cause. I think that there is sufficient information contained in there that a reasonable police officer would conclude that the [j]udge had sufficient information to issue the search warrant. It certainly was a properly signed search warrant issued by a [judge] in the [c]ourt of [c]ommon [p]leas, as opposed to maybe a [m]unicipal [c]ourt magistrate, or some other comparable role.

And, so, from the [c]ourt's perspective, I believe that the good faith exception also applies in this particular situation. And so that even if there was not sufficient probable cause in the affidavit, that the individuals who came upon the scene were authorized to do so under the good faith exception for what they believed to be a properly issued search warrant.

\* \* \*

{¶16} In affording deference the issuing judge's determination of probable cause, as this Court must, and considering the totality of the circumstances, this Court concludes that the issuing judge had a substantial basis for concluding probable cause existed to search the northeast quadrant of Mr. Pierson's property located at 18157 Station Road, Columbia Station, Ohio 44028. The trial court, therefore, did not err in denying Mr. Pierson's motion to suppress on this basis.

{¶17} Moreover, assuming arguendo the issuing judge did not have a substantial basis for concluding probable cause existed to search the northeast quadrant of Mr. Pierson's property

located at 18157 Station Road, Columbia Station, Ohio 44028, which this Court believes he did, we agree with the trial court's conclusion that the good faith exception to the exclusionary rule would apply in this instance.

{¶18} In *State v. Richardson*, 9th Dist. Summit No. 24636, 2009-Ohio-5678, ¶ 17, this Court stated:

> Pursuant to [the] [*United States v. Leon*, 468 U.S. 897 (1984)] "good faith exception," evidence seized under the authority of a warrant that a court later finds was not supported by probable cause will not be suppressed if it can be demonstrated that the officer reasonably relied on the decision of a detached and neutral [judge]. *Id*. at 920-922. "At the heart of the 'good faith[ ] exception['] is the fact that the mistake that invalidated the warrant was solely on the part of the judge who issued the warrant. The police officers, on the other hand, merely executed a warrant they thought was valid. The rationale for not excluding evidence seized in such a situation focuses on the inability of the exclusionary rule to fulfill its purpose of deterring police negligence and misconduct." *State v. Simon*, 119 Ohio App.3d 484, 487 (9th Dist.1997). However, suppression will still be the appropriate remedy if the affidavit presented to the signing judge in support of the warrant is "'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *George*, 45 Ohio St.3d at 331, quoting *Leon*, 468 U.S. at 923.

Here, the record does not demonstrate Detective Dillon acted negligently or engaged in any type of misconduct in presenting the affidavit in support of the search warrant to the issuing judge. Further, the affidavit presented to the issuing judge was not lacking in indicia of probable cause as to "render official belief in its existence entirely unreasonable." *See George* at 331, quoting *Leon* at 923. Thus, even *if* the search warrant lacked probable cause, the exclusionary rule would not apply and the items found on Mr. Pierson's property would not be suppressed.

{¶19} Accordingly, Mr. Pierson's first assignment of error is overruled.

**ASSIGNMENT OF ERROR II**

**THE JURY FOUND, AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, THAT [] [MR. PIERSON] COMMITTED THE ACTS CHARGED IN THE INDICTMENT.**

**ASSIGNMENT OF ERROR III**

**THE EVIDENCE WAS NOT LEGALLY SUFFICIENT TO SUSTAIN A GUILTY VERDICT.**

**{¶20}** In his brief, Mr. Pierson presented an argument that combined the second assignment of error, his convictions are against the manifest weight of the evidence, and his third assignment of error, his convictions are legally insufficient.

**{¶21}** It is well-established, however, that "a review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations." *State v. Torrence*, 9th Dist. Summit No. 30099. 2022-Ohio-3024, ¶ 13, quoting *State v. Vicente-Colon*, 9th Dist. Lorain No. 09CA009705, 2010-Ohio-6242, ¶ 18. Accordingly, "it is not appropriate to combine a sufficiency argument and a manifest weight argument within a single assignment of error." *Torrence* at ¶ 15, quoting *State v. Mukha*, 9th Dist. Wayne No. 18AP0019, 2018-Ohio-4918, ¶ 11; *see* Loc.R. 16(A)(7) ("Each assignment of error shall be separately discussed * * *."); *see also* App.R. 12(A)(2) ("The [C]ourt may disregard an assignment of error presented for review if the party raising it fails to * * * argue the assignment separately in the brief[.]"). However, to aid the administration of justice, we choose to exercise our discretion and consider Mr. Pierson's combined arguments separately below.

**Manifest Weight**

**{¶22}** We first turn to Mr. Pierson's assertion that his convictions are against the manifest weight of the evidence.

**{¶23}** As this Court has previously stated:

[i]n determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the fact[-]finder's resolution of the conflicting testimony." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982).

{¶24} Moreover, an appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *Otten* at 340. "[W]e are mindful that the [trier of fact] is free to believe all, part, or none of the testimony of each witness." *State v. Gannon*, 9th Dist. Medina No. 19CA0053-M, 2020-Ohio-3075, ¶ 20. "This Court will not overturn a conviction on a manifest weight challenge only because the [trier of fact] found the testimony of certain witnesses to be credible." *Id*.

{¶25} Although Mr. Pierson alleges, in his second assignment of error, that his convictions are against the manifest weight of the evidence, he has not fully developed a manifest weight argument and this Court will not develop one on his behalf. *See State v. Franks*, 9th Dist. Summit No. 28533, 2017-Ohio-7045, ¶ 16 ("Where an appellant fails to develop an argument in support of his assignment of error, this Court will not create one for him."). To the extent Mr. Pierson mentions "the confusing and lengthy testimony of the witnesses regarding property lines and location of marijuana[,]" and Detective Larkin's testimony about Mr. Pierson's admissions being "contradicted" by Detective Dillon, the jury had the opportunity to hear all testimony, including that of Mr. Pierson, and review all evidence in this matter. In so doing, the jury resolved

conflicts in the testimony, if any, and considered the credibility of the witnesses prior to reaching its decision. As such, based upon this record, we cannot say this is an exceptional case where the jury *clearly* lost its way and created a manifest miscarriage of justice.

{¶26} Accordingly, Mr. Pierson's argument that his convictions are against the manifest weight of the evidence is not well-taken.

### Sufficiency

{¶27} We turn now to Mr. Pierson's assertion, in his third assignment of error, that his convictions are not supported by sufficient evidence. "Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo." *State v. Williams*, 9th Dist. Summit No. 24731, 2009-Ohio-6955, ¶ 18, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). The relevant inquiry is whether the prosecution has met its burden of production by presenting sufficient evidence to sustain a conviction. *Thompkins* at 390 (Cook, J., concurring). For purposes of a sufficiency analysis, this Court must view the evidence in the light most favorable to the State. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We do not evaluate credibility, and we make all reasonable inferences in favor of the State. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991). The evidence is sufficient if it allows the trier of fact to reasonably conclude that the essential elements of the crime were proven beyond a reasonable doubt. *Id*.

{¶28} R.C. 2925.11(A) provides, in pertinent part: "[n]o person shall knowingly obtain, possess, or use a controlled substance[.]" "A person acts knowingly, regardless of his purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B). Further, R.C. 2923.24(A), provides: "[n]o person shall possess or have under the person's control any substance, device,

instrument, or article, with purpose to use it criminally." Additionally, pursuant to R.C. 2901.22(A), "[a] person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature."

{¶29} In his third assignment of error, Mr. Pierson argues his convictions are not supported by sufficient evidence because the State failed to prove possession, a required element of both crimes in which Mr. Pierson was convicted.

{¶30} "'Possess" or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). "Possession 'may be constructive as well as actual. Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession.'" *State v. Kendall*, 9th Dist. Summit No. 25721, 2012-Ohio-1172, ¶ 14, quoting *State v. Hankerson*, 70 Ohio St.2d 87 (1982), syllabus. "[T]he crucial issue is not whether the accused had actual physical contact with the article concerned, but whether the accused was capable of exercising dominion [and] control over it." *State v. Graves*, 9th Dist. Lorain No. 08CA009397, 2011-Ohio-5997, ¶ 15, quoting *State v. Ruby*, 149 Ohio App.3d 541, 2002-Ohio-5381, ¶ 30 (2d Dist.). "Circumstantial evidence is sufficient to support the elements of constructive possession." *State v. Williams*, 9th Dist. Summit No. 25286, 2011-Ohio-4488, ¶ 7. Additionally, "[a] person has actual possession of an item if the item is within his immediate physical possession." (Internal quotations omitted.) *State v. Williams*, 4th Dist. Ross No. 03CA2736, 2004-Ohio-1130, ¶ 23.

**{¶31}** Here, Detective Larkin, a former FBI agent of twenty-five years who had been employed with the Lorain County Drug Task Force for approximately twenty-years, testified:

> I informed [Mr. Pierson] that I was with the Lorain County Drug Task Force; that we were in the process of serving a search warrant at his property at 18157 Station Road in Ohio; that we were removing marijuana plants from that location.
>
> I told him that I had spoken with his wife, [] and that she was quite upset by this, and she had indicated that she had no knowledge whatsoever of those marijuana plants. And I said, can you help me out with what's going on with these marijuana plants? I said there's a considerable amount of marijuana. At some point, someone will probably be charged with this. Right now, the only person that we're talking to is your wife[.] Can you shed some light on what's going on here?
>
> And basically, he said, my wife [] has nothing to do with this. She's unaware of that. I will take responsibility for those marijuana plants.
>
> * * * I said, what do you mean, you take responsibility for it? How involved are you with this? And he said, well, I tend to the plants, I water the plants. He estimated, he said, I think there's about 100 plants there. And he said but my wife is not involved in it; I'll take the responsibility for this.
>
> At one point, I said to him, I said, there's a lot of plants here. Normally, when we find this many plants, we think about trafficking issues. There's more plants that I would think normally would be [for] personal use. He said, that's not the case. All [o]f this is for my personal use. Or all those plants are [for] my personal use.
>
> * * *
>
> And [Detective] Dillon was standing next to me, too. And I had it on speaker phone, so he could hear what the conversation was about.
>
> * * *
>
> The only thing that maybe is not reflected in my report is I do remember that, at some point while I was still standing there, Mrs. Pierson went on the back porch and contacted who I believe to be [Mr.] Pierson, and was extremely upset. It was a very heated conversation, so it kind of indicated to me that maybe * * * she was not involved in this, and was quite upset with it.
>
> * * *

**{¶32}** Detective Dillon, a peace officer for fifty-years, testified based upon the Lorain County Auditor's map, marked as State's Exhibit 50, that "[w]ithout a doubt in [his] mind, [the

marijuana plants] were on [Mr.] Pierson's property." Further, as to the conversation between Detective Larkin and Mr. Pierson, Detective Dillon testified:

> the specific area of the conversation I recall hearing, and, like I say, I wasn't present for all of it, was [Detective] Larkin asked Mr. Pierson why he was growing so many marijuana plants. And his response was a little odd, and that's why I remember. [Mr. Pierson] eluded to the fact he was just trying to get ahead of the game.

When asked whether Mr. Pierson made any statements "acknowledging that he was responsible for the marijuana plants," Detective Dillon responded he did not recall if Mr. Pierson did so in that conversation, but "[h]e did in a later one that [he] had with him." Upon playing the recorded conversation between Detective Dillon and Mr. Pierson for the jury, the State questioned Detective Dillon regarding whether Mr. Pierson acknowledged responsibility for the marijuana plants, and Detective Dillon stated: "during that conversation, he made the statement that, ultimately, he's responsible for what's on his property." Notably, the recording of this conversation was also provided to the jury during its deliberations. Further, as to possession of the sump pump and felt bags, some of which were found in the barn, Mr. Pierson admitted to owning these items and the jury heard testimony, and saw photographic evidence, they were used in conjunction with the marijuana plants. Mr. Pierson's hose was also attached to the sump pump and ran through an area where marijuana plants were growing.

{¶33} "Viewing this evidence in a light most favorable to the State, this Court concludes that a trier of fact could reasonably conclude beyond a reasonable doubt that Mr. Pierson possessed, either actually or constructively, drugs and criminal tools. Mr. Pierson's convictions for possession of drugs and possession of criminal tools are, therefore, based upon sufficient evidence.

{¶34} Accordingly, Mr. Pierson's second and third assignments of error are overruled.

III.

**{¶35}** For the foregoing reasons, Mr. Pierson's three assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETTY SUTTON
FOR THE COURT

CARR, P. J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

HENRY J. HILOW and ADAM M. CHALOUPKA, Attorneys at Law, for Appellant.

J.D. TOMLINSON, Prosecuting Attorney, and LINDSEY C. POPROCKI, Assistant Prosecuting Attorney, for Appellee.