[Cite as *State v. Berry*, 2024-Ohio-923.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. Patricia A. Delaney, P.J. |
| | : | Hon. W. Scott Gwin, J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | |
| -vs- | : | |
| | : | Case No. 2020CA00137 |
| JOSEPH MATTHEW BERRY | : | |
| | : | |
| Defendant-Appellant | : | OPINION |

CHARACTER OF PROCEEDING:      Appeal from the Stark County Court of
Common Pleas, Case No. 2020CR0978

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      March 12, 2024

APPEARANCES:

For Plaintiff-Appellee

KYLE STONE
Stark Coounty Prosecutor
CHRISTOPHER A. PIEKARSKI
Assistant Prosecutor
110 Central Plaza South, Ste. 510
Canton, OH 44702

For Defendant-Appellant

GEORGE URBAN
116 Cleveland Ave. N.W.
Suite 808
Canton, OH 44702

*Gwin, J.,*

**{¶1}** Defendant-appellant Joseph Matthew Berry [Berry] appeals his convictions and sentences after a jury trial in the Stark County Court of Common Pleas.

*Facts and Procedural History*

**{¶2}** Berry was indicted on June 24, 2020 with the following,

Aggravated Robbery, a felony of the first degree in violation of R.C. 29111.01 with a three-year firearm specification pursuant to R.C. 2941.145(A) and a five-year firearm specification pursuant to R.C. 2941.146(A);[1]

Felonious Assault, a felony of the second degree in violation of R.C. 2903.11(A)(1) [Cause serious physical harm to another or to another's unborn]/(A)(2) [Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance], with a three-year firearm specification pursuant to R.C. 2941.145(A) and a five-year firearm specification pursuant to R.C. 2941.146(A);

Discharge of firearm on or near prohibited premises, a felony of the third degree in violation of R.C. 2923.162 (A)(3) [Discharge a firearm upon or over a public road or highway], with a three-year firearm specification pursuant to R.C. 2941.145(A) and a five-year firearm specification pursuant to R.C. 2941.146(A); and

Improperly handling firearms in a motor vehicle, a felony of the fourth degree, in violation of R.C. 2923.16 (B).

---

[1] A firearm specification under R.C. 2941.146 concerns the discharge of a firearm from a motor vehicle and is known as a "drive-by" specification.

*D.L discovers someone in his car*

{¶3}    D.L. lives with two older gentlemen, 68 and 65 years old respectively. 2T. at 195.[2] On the evening of May 12, 2020, D.L. brought home some groceries and was unloading them in his kitchen when he heard a sound coming from the latch on the front door of his home. 2T. at 196. He assumed it was one of his two older roommates who sometimes have trouble with the lock on the door. 2T. at 195-196, 210-211. A few minutes later, D.L. heard someone knocking on the front door. When he looked through the peephole he saw an unknown black male standing outside the door. 2T. at 197, 216-217, 256-257. D.L. put his dog in the backyard and returned to the front door to find no one there. Id. at 197.

{¶4}    As D.L. resumed putting away his groceries, he glanced out the window and saw someone sitting in the driver's seat of his Jeep Cherokee, which was parked on the street. 2T. at 198. Initially D.L. thought it was his son. 2T. at 205. As he approached the jeep, D.L. still believed it was his son because he has similar features Id. He described the individual as Caucasian with blonde or light brown hair and tattoos on his face and neck. Id. at 205-206.

{¶5}    Upon reaching the jeep, D.L. realizes that the man in the driver's seat is not his son. Id. at 206. When D.L. confronted the person sitting in his vehicle, the person asked where was D.L.'s son. Id.

{¶6}    D.L. does not have a good relationship with his son, in part because his son, Z.B., has a heroin problem. The two still occasionally speak on the phone. 2T. at 206-

_____

[2] For clarity, the transcript of Berry's jury trial will be referred to as "__T.__" signifying the volume and page number.

207. D.L. had recently thrown Z.B. out of the home for trying to steal D.L.'s Jeep Cherokee. 2T. at 207.

{¶7} D.L. looked down into the man's lap, and saw that he was holding and pointing a gun at him. 2T. at 208, 211, 260. D.L. described the gun as a silver .32 caliber revolver with a stainless-steel finish. 2T. at 208, 260, 339. He also noticed that the man, later identified as Berry, was holding D.L.'s keys in the same hand as the gun. 2T. at 209, 266, 273. D.L. realized that he must have left his keys in the front door lock while unloading groceries, and that the wiggling sound he heard was not his roommates trying to open the front door, but rather someone taking the keys out of the door. 2T. at 210-211.

{¶8} Berry told D.L. to "get in," but D.L. opened the driver's side door and said, "No, you get out, and give me my keys." 2T. at 211- 212. Berry refused to get out of the Jeep and threatened to shoot D.L. 2T. at 209. Berry demanded, "Where's your son?" and "Call your son." 2T. at 206-207; 212. D.L. said okay, but he instead attempted to call 9-1-1. 2T. at 212-213. D.L. was pushing the now-open driver's side door into Berry's leg and told Berry that he was calling 9-1-1. 2T. at 212-213, 264. A struggle ensued and Berry exited the vehicle. Id. at 213.

{¶9} At that time, the lighter-skinned black male who knocked on the front door earlier ran behind D.L. and "hooked" him in the back of the neck, knocking D.L. down onto the street. 2T. at 213-216. The man told Berry, "Give him the keys" and then ran away. 2T. at 214, 266. Berry hit D.L with a gun while D.L. was attempting to prevent Berry from fleeing. 2T. at 215-216.

{¶10} Berry ran in the same direction as the black male, and D.L. gave chase. 2T. at 219, 330. Berry briefly turned around at one point, looked at D.L., pointed the gun at him, and fired one shot at him. 2T. at 219-220. D.L. resumed the chase and saw the black male standing by the open door of a small, black SUV. 2T. at 220-221. D.L. saw several people in the SUV and several more in an ugly, mint or off-green car in front of it, which he believed was perhaps an Escort, Kia, or Nissan. 2T. at 221-224, 269-271. When Berry reached the green car, he pointed his gun over it and shot at D.L. once more; D.L. ducked down in response. 2T. at 224; 274. As D.L. tried to get a picture of one of the license plates with his phone, Berry pointed the gun at him through the window, but D.L. did not see him fire it. 2T. at 226-227, 272. Another shot came from the green car, and D.L. lied down on the ground. 2T. at 224-225, 330. A fourth and final shot then rang out while D.L. was still on the ground. 2T. at 224-226, 330. The vehicles sped off together, with Berry driving the green car and the black male driving the SUV. 2T. at 230-231, 233, 273-274.

{¶11} D.L. testified that he recognized the white man as "Brix", a person whom he had met at his garage, while helping his son's friend about a car. 2T. at 231-232.

{¶12} A neighbor, A.M., testified that he was outside of his home on that day when he heard the first gunshot, initially believing it to be a firecracker. 2T. at 282-285. He looked up and saw a small, light brown or tan SUV make a left turn in a hurry. 2T. at 285; 287; 291. He also saw the muzzle flashes of three more gunshots coming from the back seat of a mint green Nissan Altima as it sped off northbound up McGregor Avenue. 2T. at 285-286, 291. According to A.M., the gunshots did not sound like they all came from the same gun, as the first shot had a different sound to it and was not as loud as the others. 2T. at 286.

**{¶13}** Detective Zachary Taylor of the Canton Police Department responded to the dispatch call that day for a robbery with shots fired. D.L. explained to Detective Taylor that a shooting occurred and provided a physical description and identified the shooter as a friend of Z.B.'s named "Joe Berry." 2T. at 233, 299-300, 306-307, 328-329. Later, after police left, D.L. searched Facebook and located what he believed to be a photo of the person shooting at him. Id. at 234. After telling the police who he believes the perpetrator is, D.L. is taken to police headquarters and identifies Berry through a photo lineup. Id. at 237; 370 372.

**{¶14}** No shell casings were recovered from the scene, and no evidence of damage to property was discovered during the investigation. Detective Taylor observed a small amount of blood and a cut on D.L.'s upper lip, and learned that the hit from the gun caused one of D.L.'s teeth to come loose. 2T. at 305; 342.

**{¶15}** Detective Taylor eventually contacted Berry on May 18, 2020, at an apartment on Minerva Court NW, in Canton. 2T. at 309. Berry and three others, D.S., G.S., and S.M., were inside of the apartment at the time. 2T. at 309-310. A lime green Nissan Altima was also observed in the apartment's parking lot. 2T. at 310. Inside the apartment, Berry was refusing to surrender to the patrolmen on scene, so Detective Taylor spoke to him from the common hallway of the complex and negotiated Berry's eventual surrender and arrest. 2T. at 309, 313.

**{¶16}** D.S., who was one of the individuals present when Berry was arrested, later called Detective Taylor, who then returned to the apartment. 2T. at 318-319, 335. D.S., G.S., and another woman all gave the detective D.L.'s keys. 2T. at 318-319, 334-335; The keys matched the detailed description given by D.L. 2T. at 319-320. The three

individuals all told Detective Taylor that they had gone through all of Berry's property in the apartment, gathered it all up into a clear, plastic trash bag, and placed it in one of the rooms; the keys were located inside of that bag. 2T. at 337.

{¶17} On August 11, 2020, D.L. was working in his garage around 11:00 p.m. or 11:30 p.m. when he heard a "pretty loud bang" at the door. 2T. at 242-244. He asked who was there, and when he cracked the door open he saw an unknown black male in a gray hoodie and dark pants. 2T; at 244-245. The man said he had $1,500 for D.L. if he "didn't appear [,]" which D.L. interpreted as an attempted buyout in exchange for not showing up at Berry's trial. 2T. at 244-245.

{¶18} Before the case was submitted to the jury, the state dismissed the five-year firearm specification to Count One and Count Three. 2T. at 387. The state further elected with respect to the charge of felonious assault to proceed on R.C. 2903.11(A)(2), "Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance" and to dismiss R.C. 2903.11(A)(1), "Cause serious physical harm to another or to another's unborn." 2T. at 161-162.

{¶19} The jury ultimately found Berry guilty of aggravated robbery, felonious assault, discharge of firearm on or near prohibited premises, and improperly handling firearms in a motor vehicle. As for the four remaining firearm specifications, the jury made special findings that Berry did not have a firearm on or about his person or under his control and did not commit felonious assault by discharging a firearm from a motor vehicle.

{¶20} On August 19, 2020, the trial court sentenced Berry to an indefinite minimum prison term of ten years to fifteen years for aggravated robbery, to be run

consecutively to an indefinite minimum prison term of four years to six years` for felonious assault. The court further sentenced him to prison terms of thirty-six months for discharge of firearm on or near prohibited premises and eighteen months for improperly handling firearms in a motor vehicle, to be served concurrently with each other and concurrently with the sentences for aggravated robbery and felonious assault. Berry therefore received an aggregate indefinite sentence of fourteen years up to a maximum of fifteen years in prison. Sent. T., Aug. 19, 2020 at 28-29; 30-31.

{¶21} The Department of Corrections notified the trial judge that the sentence was calculated incorrectly. The sentence should be an indefinite period of 14 to 18 years, rather than the maximum of 15 years. T. Re-sentencing, Aug. 28, 2020 at 3-4. On August 28, 2020, the trial court re-sentenced Berry to an indefinite minimum prison term of ten years for aggravated robbery, to be run consecutively to an indefinite minimum prison term of three years for felonious assault. The court further re-sentenced him to prison terms of thirty-six months for discharge of firearm on or near prohibited premises and eighteen months for improperly handling firearms in a motor vehicle, to be served concurrently with each other and concurrently with the sentences for aggravated robbery and felonious assault. Berry therefore received an aggregate indefinite sentence of thirteen years up to a maximum of eighteen years in prison. Id. at 9: Judgment Entry, Sept. 18, 2020 at 4.

{¶22} On November 2, 2020, the trial court filed a Sentencing Entry sentencing Berry as follows: On Count 1 (aggravated robbery) for 10-years; on Count 2 (felonious assault) for 3-years consecutive with Count. 1; on Count 3 (discharge of a firearm on or near prohibited premises) for 36-months; on Count 4 (improperly handling firearms in a

motor vehicle) for 18-months concurrent with Count 3, for a total of 13.0 - 15.0 years incarceration. The trial judge noted in her entry, that "this entry shall supersede any previous documents calculating the sentence in this matter nunc pro tunc." Judgment Entry, Nov. 2, 2020 at 6; 9. [Docket Entry No. 52].

**{¶23}** Berry filed a direct appeal with this Court and further filed a motion for a new trial with the trial court. On October 19, 2020, the trial court denied the motion for a new trial for lack of jurisdiction, due to the pending appeal.

**{¶24}** On February 17, 2021, this Court dismissed Berry's appeal for want of prosecution. Due to lack of communication and action by his previous appellate attorneys the trial court appointed a new attorney to represent Berry on June 20, 2023. On July 7, 2023, Berry filed an application to reopen his appeal, pursuant to App.R. 26(B). This Court granted Berry's application to reopen his appeal on August 2, 2023.

*Assignment of Error*

**{¶25}** Berry raises one Assignment of Error,

**{¶26}** "I. THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION AGAINST THE APPELLANT AND THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, THEREBY VIOLATED APPELLANT'S GUARANTEES OF DUE PROCESS PURSUANT TO THE FOURTEENTH AMENDMENT OF THE US CONSTITUTION AND ARTICLE ONE, SECTION TEN OF THE OHIO CONSTITUTION, AND THE CONVICTION MUST BE REVERSED."

*Law and Analysis*

**{¶27}** Berry argues that his convictions are against the sufficiency and manifest weight of the evidence. Specifically, Berry contends that the victim was confused about his assailant's identity [Appellant's brief at 10]; the victim story is contradicted by the testimony of the neighbor, thereby indicating that D.L. is trying to protect his son [Appellant's brief at 11]; D.L.'s identification of Berry is tainted [Appellant's brief at 11-12]; no physical or DNA evidence ties Berry to the crime [Appellant's brief at 12]; and the jury verdicts are inconsistent. [Appellant's brief at 13-15].

**Standard of Appellate Review – Sufficiency of the Evidence**

**{¶28}** The Sixth Amendment provides, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury...." This right, in conjunction with the Due Process Clause, requires that each of the material elements of a crime be proved to a jury beyond a reasonable doubt. *Alleyne v. United States*, 570 U.S. 99, 133 S.Ct. 2151, 2156, 186 L.Ed.2d 314 (2013); *Hurst v. Florida*, 577 U.S. 92, 136 S.Ct. 616, 621, 193 L.Ed.2d 504 (2016). The test for the sufficiency of the evidence involves a question of law for resolution by the appellate court. *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶30; *State v. Jordan,* Slip Op. No. 2023-Ohio-3800, ¶13. "This naturally entails a review of the elements of the charged offense and a review of the state's evidence." *State v. Richardson*, 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶13.

**{¶29}** When reviewing the sufficiency of the evidence, an appellate court does not ask whether the evidence should be believed. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by State constitutional*

*amendment on other grounds as stated in State v. Smith, 80 Ohio St.3d 89, 102 at n.4, 684 N.E.2d 668 (1997)*; *Walker*, 150 Ohio St.3d at ¶30. "The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus. *State v. Poutney*, 153 Ohio St.3d 474, 2018-Ohio-22, 97 N.E.3d 478, ¶19. Thus, "on review for evidentiary sufficiency we do not second-guess the jury's credibility determinations; rather, we ask whether, '*if believed*, [the evidence] would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001), *quoting Jenks* at paragraph two of the syllabus; *Walker* 150 Ohio St.3d at ¶31. We will not "disturb a verdict on appeal on sufficiency grounds unless 'reasonable minds could not reach the conclusion reached by the trier-of-fact.'" *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 94, *quoting State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997); *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶74.

**Issue for Appellate Review**: *Whether, after viewing the evidence in the light most favorable to the prosecution, the evidence, if believed, would convince the average mind that Berry was guilty beyond a reasonable doubt of Aggravated robbery, Felonious Assault, Discharge of firearm on or near prohibited premises, and Improperly handling firearms in a motor vehicle*

*Aiding and Abetting*

{¶30} The trial judge instructed the jury on complicity. R.C. 2923.03, in pertinent part, states,

(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:

(2) Aid or abet another in committing the offense[.]

**{¶31}** Anyone complicit in the commission of an offense by aiding and abetting the principal offender "shall be prosecuted and punished as if he were a principal offender." R.C. 2923.03(A)(2)/(F).

**{¶32}** It is true that a person's mere association with a principle offender is not enough to sustain a conviction based on aiding and abetting. *State v. Sims*, 10 Ohio App.3d 56, 58, 460 N.E.2d 672, 674-675 (8th Dist. 1983); *State v. Paskins*, 5th Dist. Fairfield No. 2021 CA 00033, 2022-Ohio-4024, ¶26. With respect to the requirements for a conviction for aiding and abetting, the Supreme Court of Ohio has stated,

> To support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal. Such intent may be inferred from the circumstances surrounding the crime.

*State v. Johnson*, 93 Ohio St.3d 240, 2001-Ohio-1336, 754 N.E.2d 796, at syllabus.

**{¶33}** Aiding and abetting may be shown by both direct and circumstantial evidence and participation may be inferred from presence, companionship, and conduct before and after the offense is committed. *Paskins*, ¶27, *citing State v. Cartellone*, 3 Ohio App.3d 145, 150, 444 N.E.2d 68, (8th Dist. 1981), *citing State v. Pruett*, 28 Ohio App.2d 29, 34, 273 N.E.2d 884 (4th Dist. 1971); *See also, State v. Mendoza*, 137 Ohio App.3d

336, 342, 738 N.E.2d 822 (3rd Dist. 2000), quoting State v. Stepp, 117 Ohio App.3d 561, 568–569, 690 N.E.2d 1342 (4th Dist. 1997).

**{¶34}** Aiding and abetting may also be established by overt acts of assistance such as driving a getaway car or serving as a lookout. *Paskins*, ¶28, *citing State v. Cartellone*, 3 Ohio App.3d at 150, 444 N.E.2d 68. *See also, State v. Trocodaro*, 36 Ohio App.2d 1, 301 N.E.2d 898 (10th Dist. 1973); *State v. Lett*, 160 Ohio App.3d 46, 52, 2005-Ohio-1308, 825 N.E.2d 1158, 1163 (8th Dist.); *State v. Polite*, 5th Dist. Stark No. 2017 CA 00129, 2018-Ohio-1372, 2018 WL 1747931, ¶56.

**{¶35}** "The court must view the evidence in the light most favorable to the prosecution and defer to the trier of fact on questions of credibility and the weight assigned to the evidence. *State v. Fry*, 125 Ohio St.3d 163, 2010-Ohio-1017, 926 N.E.2d 1239, ¶ 146." *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 132; *State v. McFarland*, 162 Ohio St.3d 36, 2020-Ohio-3343, 164 N.E.3d 316, ¶29.

**{¶36}** R.C. 2923.03(F) states, "A charge of complicity may be stated in terms of this section, or in terms of the principal offense." "The Supreme Court of Ohio clarified Ohio's position on the issue of complicity in *State v. Perryman*, 49 Ohio St.2d 14, 358 N.E.2d 1040 (1976), *vacated in part on other grounds sub nom, Perryman v. Ohio (1978), 438 U.S. 911, 98 S.Ct. 3136, 57 L.Ed.2d 1156*. The court unequivocally approved of the practice of charging a jury regarding aiding and abetting even if the defendant was charged in the indictment as a principal. Id. The court held that the indictment as principal performed the function of giving legal notice of the charge to the defendant. Id. Therefore, if the facts at trial reasonably supported the jury instruction on aiding and abetting, it is proper for the trial judge to give that charge. *Perryman*, *supra* at 27, 28." *State v. Payton*,

8th Dist. Cuyahoga Nos. 58292, 58346, 1990 WL 48952 (Apr 19, 1990), at *8; *State v. Hickman,* 5th Dist. Stark No. 2003-CA-00408, 2004-Ohio-6760, ¶43.

*Aggravated Robbery*

**{¶37}** R.C. 2911.01, in pertinent part, states:

(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:

(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]

**{¶38}** D.L. testified that he observed Berry seated in the driver's seat of Berry's Jeep Cherokee. D.L. further testified he observed a silver .32 caliber revolver with a stainless-steel finish pointed at him. 2T. at 208, 260, 339. He also noticed that Berry was holding D.L.'s keys in the same hand as the gun. 2T. at 209, 266, 273. Berry fled with the keys.

**{¶39}** Viewing this evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Berry did commit the crime of aggravated robbery.

**{¶40}** We hold, therefore, that the state met its burden of production regarding each element of the crime of Aggravated Robbery for which Berry was indicted and, accordingly, there was sufficient evidence to submit the charge to the jury and to support Berry's conviction.

*Felonious Assault*

{¶41} The elements of felonious assault are set forth in R.C. 2903.11, which provides in pertinent part:

(A) No person shall knowingly:

* * *

(2) Cause or attempt to cause physical harm to another by means of

a deadly weapon or dangerous ordinance, as defined in section 2923.11 of

the Revised Code.

{¶42} Simply pointing a gun at another is not enough to prove an attempt to cause physical harm. *State v. Brooks*, 44 Ohio St.3d 185, 192, 542 N.E.2d 636, 642(1989). "Something more" is required to establish intent. Verbal threats or other demonstrative evidence which are perceived by a reasonable person under the circumstances to be a threat could fulfill the requirement for additional evidence. *State v. Green*, 58 Ohio St.3d 239, 241, 569 N.E.2d 1038, 1041(1991). That threat must indicate an intention to use that weapon. Id. at 241-242, 569 N.E.2d 1038; *State v. DeWalt*, 5th Dist. Stark No. 2020CA00031, 2020-Ohio-5504, ¶ 22.

{¶43} In the case at bar, D.L. testified that Berry pointed the gun at him and threatened to shoot him. 2T. at 209. Further, Berry testified that Berry struck him in the head with the gun as Berry was attempting to prevent him from fleeing. 2T. at 216-217. This evidence establishes the essential elements of the crime of felonious assault under R.C. 2903.11(A)(2) in that a firearm used as a bludgeon is "capable of inflicting death." *See State v. Gaines*, 46 Ohio St.3d 65, 68, 545 N.E.2d 68, 71(1989); *State v. Jackson*, 92 Ohio St.3d 436, 440, 751 N.E.2d 946, 955 (2001).

{¶44} Viewing this evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Berry did commit the offense of Felonious Assault.

{¶45} We hold, therefore, that the state met its burden of production regarding each element of the crime of Felonious Assault for which Berry was indicted and, accordingly, there was sufficient evidence to submit the charge to the jury and to support Berry's conviction.

*Discharge of firearm on or near prohibited premises*

{¶46} R.C. 2923.162 sets forth the offense of discharge of a firearm on or near prohibited premises. R.C. 2923.162(A)(3) prohibits a person from "[d]ischarg[ing] a firearm upon or over a public road or highway." The offense is a strict liability offense. *State v. James*, 2015-Ohio-4987, 53 N.E.3d 770, ¶ 33 (8th Dist.); *State v. Wilson*, 8th Dist. Cuyahoga No. 111755, 2023-Ohio-1042, ¶ 39; *State v. Anderson*, 5th Dist. Richland No. 2020 CA 0068, 2021-Ohio-2316, ¶39.

{¶47} The state's evidence showed that Berry created a substantial risk of physical harm when he shot at D.L. 2T. at 219-220. He again fired his weapon "over the car" in D.L.'s direction. Id. at 224. He fired a third and fourth time as D.L. ducked down to avoid being struck by the bullets. Id. at 224-225. Berry then jumped into the driver's seat of the Altima and sped off, and more gunshots were fired from inside the car. 2T. at 226-227. A.M. recalled seeing multiple muzzle flashes as gunfire erupted from within Berry's car. 2T. at 283, 285-286, 291.

{¶48} Viewing this evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that

Berry did, at the very least, aid and abet another to commit the offense of Discharge of firearm on or near prohibited premises.

**{¶49}** We hold, therefore, that the state met its burden of production regarding each element of the crime of Discharge of firearm on or near prohibited premises for which Berry was indicted and, accordingly, there was sufficient evidence to submit the charges to the jury and to support Berry's conviction.

*Improperly handling firearms in a motor vehicle*

**{¶50}** R.C. 2923.16(B), Improperly handling firearms in a motor vehicle prohibits knowingly transporting or having a loaded firearm in a motor vehicle in such a manner that the firearm is accessible to the driver or any passenger without leaving the vehicle.

**{¶51}** Berry jumped into the driver's seat of the Altima and sped off, and more gunshots were fired from inside the car. 2T. at 226-227. A.M. recalled seeing multiple muzzle flashes as gunfire erupted from within Berry's car. 2T. at 283, 285-286, 291.

**{¶52}** Viewing this evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Berry did, at the very least, aid and abet another in committing the offense of Improperly handling firearms in a motor vehicle.

**{¶53}** We hold, therefore, that the state met its burden of production regarding each element of the crime of Improperly handling firearms in a motor vehicle for which Berry was indicted and, accordingly, there was sufficient evidence to submit the charges to the jury and to support Berry's conviction.

*Pretrial police identification procedure*

**{¶54}** Berry did not file a motion to suppress the pretrial police identification procedure, in this case the photo array compiled by the police. A failure to timely file a motion to suppress evidence amounts to a waiver of any such issues for purposes of trial pursuant to Crim.R. 12(D) and (H). *State v. Montgomery*, 5th Dist. Licking No. 2007 CA 95, 2008-Ohio-6077, 2008 WL 4965196, ¶ 43, *citing State v. Wade* (1973), 53 Ohio St.2d 182, 373 N.E.2d 1244 (1978), *vacated and remanded on other grounds*, 438 U.S. 911, 98 S.Ct. 3138, 57 L.Ed.2d 1157 (1978).

*Inconsistent verdicts*

**{¶55}** The charge of aggravated robbery specifies that if any person in the course of attempting or committing a theft offense has a deadly weapon or dangerous ordnance on him, or under his control, he can be found guilty of aggravated robbery. The firearms specification, of which Boyd was acquitted, makes a separate crime out of having a firearm while the robbery offense is being committed. Thus, Berry argues the verdict on the aggravated robbery count is inconsistent with the jury's acquittal on the attendant firearm specification. He makes the same argument with respect to the felonious assault, discharge of a firearm at on or near prohibited premises and improperly handling firearms in a motor vehicle charge.

**{¶56}** In *State v. Gapen*, the Ohio Supreme Court reiterated,

First, "[i]nconsistent verdicts on different counts of a multi-count indictment do not justify overturning a verdict * * *." *State v. Hicks* (1989), 43 Ohio St.3d 72, 78, 538 N.E.2d 1030, *citing United States v. Powell* (1984), 469 U.S. 57, 68, 105 S.Ct. 471, 83 L.Ed.2d 461; *see, also, State v.*

*Mapes* (1985), 19 Ohio St.3d 108, 112–113, 19 OBR 318, 484 N.E.2d 140. As we stated in State *v. Adams* (1978), 53 Ohio St.2d 223, 7 O.O.3d 393, 374 N.E.2d 137, paragraph two of the syllabus, "The several counts of an indictment containing more than one count are not interdependent and an inconsistency in a verdict does not arise out of inconsistent responses to different counts, but only arises out of inconsistent responses to the same count." Thus, inconsistency of sentencing verdicts on the different counts does not require that Gapen's death sentence be vacated.

104 Ohio St.3d 358, 2004-Ohio-6548, 819 N.E.2d 1047, ¶ 138.

{¶57} In State *v. Perryman*, 49 Ohio St.2d 14, 25-26, 358 N.E.2d 1040 (1976), *vacated in part on other grounds, 438 U.S. 911, 98 S.Ct. 3136, 57 L.Ed.2d 1156 (1978)* the jury found the accused guilty of aggravated murder and aggravated robbery, but found the accused not guilty of a specification involving aggravated robbery. In rejecting the claim of a fatal inconsistency, the Ohio Supreme Court stated:

The sentence was not based on an alleged inconsistency. The guilty verdict for count one reflects the jury's determination that appellant was guilty of the felony-murder. The determinations rendered as to the respective specifications cannot change that finding of guilty. Furthermore, as indicated in R.C. 2929.03(A), one may be convicted of aggravated murder, the principal charge, without a specification. Thus, the conviction of aggravated murder is not dependent upon findings for the specifications thereto. Specifications are considered after, and in addition to, the finding of guilt on the principal charge.

Id. at 26. Later, in *State v. Koss*, 49 Ohio St.3d 213, 551 N.E.2d 970 (1990), the appellant argued the jury's guilty verdict of voluntary manslaughter was inconsistent with the not guilty attendant firearm specification, and the Ohio Supreme Court concluded the verdicts were inconsistent. *Koss*, 49 Ohio St.3d 213, 551 N.E.2d 970.

**{¶58}** However, appellate courts, including this court, have continued to follow the rationale in *Perryman*. *See, State v. Cook,* 5th Dist. Stark No. 98-CA-00133, 1999 WL 4162, *4. In *State v. Amey*, 2018-Ohio-4207, 120 N.E.3d 503 (8th Dist.), the court observed,

> *Amey* relies on *State v. Koss*, 49 Ohio St.3d 213, 551 N.E.2d 970 (1990), in support of his inconsistent-verdicts argument. In that case, the Ohio Supreme Court held that an acquittal on a gun specification but the finding of guilt on the principal offense of voluntary manslaughter for causing the death of a victim with the firearm were inconsistent, and therefore, the voluntary manslaughter conviction was reversed. There was no legal authority or analysis in support of the conclusion reached in that case. *Koss*, in fact, contradicted the Ohio Supreme Court's earlier conclusion on inconsistency between the principal charge and the associated specification. *State v. Perryman*, 49 Ohio St.2d 14, 25-26, 358 N.E.2d 1040, paragraph 3 of the syllabus (1976) ("Where a jury convicts a defendant of an aggravated murder committed in the course of an aggravated robbery, and where that defendant is concurrently acquitted of a specification indicting him for identical behavior, the general verdict is not invalid.").

Although some courts valued *Koss* based on recency, that support has faded. *State v. Given*, 7th Dist. Mahoning No. 15 MA 0108, 2016-Ohio-4746, ¶ 73-75, *citing Perryman* (noting the conflict created by *Koss* and deeming the decision in *Koss* to be of limited value); *see also State v. Lee*, 1st Dist. Hamilton No. C-160294, 2017-Ohio-7377, ¶ 43; *State v. Ayers*, 10th Dist. Franklin No. 13AP-18, 2013-Ohio-5601, ¶ 24. It may be time to consider *Koss* as nothing more than an outlier; however, any such conclusion would be outside the scope of this appeal.

*Amey*, 2018-Ohio-4207 at ¶ 17-18.

**{¶59}** A firearm specification does not define a substantive offense.

R.C. 2941.145 and 2929.14(D) do not contain a positive prohibition of conduct, as required by R.C. 2901.03(B). Instead, these provisions indicate that if a defendant is convicted of a felony offense and, during the commission of that offense, if the defendant displays, indicates possession of, or uses a firearm to facilitate the offense, the defendant's underlying felony sentence will be increased by three years. In other words, the statutes do not state that a defendant shall not use a firearm during the commission of a crime: they state that when a firearm is used, an additional penalty will be imposed. Thus, the firearm specification is merely a sentencing provision that requires an enhanced penalty upon certain findings. We hold that R.C. 2941.145 and 2929.14(D) define a sentence enhancement that attaches to a predicate offense.

*State v. Ford*, 128 Ohio St.3d 398, 2011-Ohio-765, 945 N.E.2d 498, ¶16 (citations omitted). Therefore, finding or not finding on the specification cannot affect the finding of guilt on the predicate offense.

{¶60} We have found that sufficient evidence was presented to sustain the jury's verdict on each count of the indictment. A finding of not guilty on the firearm specifications does not create an inconsistent verdict that invalidates the guilty finding on the principal charges. Though inconsistency can indicate confusion or doubt on the part of jurors, it can also indicate compromise or mercy. *State v. Trewartha*, 165 Ohio App.3d 91, 2005-Ohio-5697, 844 N.E.2d 1218, ¶ 16 (10th Dist.). "[I]nconsistent verdicts—even verdicts that acquit on a predicate offense while convicting on the compound offense—should not necessarily be interpreted as a windfall for the Government at the defendant's expense." *United States v. Powell*, 469 U.S. 57, 62, 65,105 S.Ct. 471, 83 L.Ed.2d 461(1984). As *Powell* notes, "[i]t is equally possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense." Id. *Accord, State v. Gardner*, 118 Ohio St.3d 420, 2008–Ohio–2787, 889 N.E.2d 995(2008), ¶81.

{¶61} Berry's remaining arguments addressing the credibility of the witnesses and the lack of physical evidence tying him to the crime, are better addressed to the manifest weight of the evidence.

### Standard of Appellate Review – Manifest Weight

{¶62} As to the weight of the evidence, the issue is whether the jury created a manifest miscarriage of justice in resolving conflicting evidence, even though the evidence of guilt was legally sufficient. *State v. Thompkins*, 78 Ohio St.3d 380, 386–387,

678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith, 80 Ohio St.3d 89, 684 N.E.2d 668, 1997–Ohio–355*; *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001).

**{¶63}** Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, *supra,* 78 Ohio St.3d at 386-387, 678 N.E.2d 541(1997), *State v. Williams,* 99 Ohio St.3d 493, 2003-Ohio-4396, 794 N.E.2d 27, ¶83. When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the fact finder's resolution of the conflicting testimony. *State v. Jordan*, Slip Op. No. 2023-Ohio-3800; *Thompkins* at 387, 678 N.E.2d 541, *citing Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652(1982) (quotation marks omitted); *State v. Wilson,* 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1244, ¶25, citing *Thompkins.*

**{¶64}** Once the reviewing court finishes its examination, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins, supra*, 78 Ohio St.3d at 387, *quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983). The Ohio Supreme Court has emphasized: "'[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *.'" *Eastley v. Volkman,* 132 Ohio St.3d 328, 334, 972 N.E.2d 517, 2012-Ohio-2179, *quoting Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d

1273 (1984), fn. 3, *quoting* 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191–192 (1978).

**{¶65}** As one Court has explained,

When faced with a manifest weight of the evidence challenge, we must consider whether the state "carried its burden of persuasion" before the trial court. *State v. Messenger*, Slip Opinion No. 2022-Ohio-4562, ¶ 26; *see State v. Martin*, Slip Opinion No. 2022-Ohio-4175, ¶ 26. Unlike the burden of production, which concerns a party's duty to introduce enough evidence on an issue, the burden of persuasion represents a party's duty to convince the factfinder to view the facts in his or her favor. *Messenger* at ¶ 17. Therefore, in order for us to conclude that the factfinder's adjudication of conflicting evidence ran counter to the manifest weight of the evidence— which we reserve for only the most exceptional circumstances—we must find that the factfinder disregarded or overlooked compelling evidence that weighed against conviction. *State v. Thompkins*, 78 Ohio St.3d 380, 387- 388, 678 N.E.2d 541 (1997). We accordingly sit as a "thirteenth juror" in this respect. Id.

*State v. Gibson*, 1st Dist. Hamilton No. C-220283, 2023-Ohio-1640, ¶ 8.

**{¶66}** Further, to reverse a jury verdict as being against the manifest weight of the evidence, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required pursuant to Article IV, Section 3(B)(3) of the Ohio Constitution. *Bryan-Wollman v. Domonko*, 115 Ohio St.3d 291, 2007-Ohio-4918, ¶ 2-4, *citing Thompkins* at paragraph four of the syllabus.

**Issue for Appellate Review**:  *Whether the jury clearly lost their way and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered*

{¶67}  While there was conflicting testimony presented at trial, a defendant "is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented." *State v. Rankin*, 10th Dist. No. 10AP-1118, 2011-Ohio-5131, ¶ 29. *See also State v. J.E.C.*, 10th Dist. No. 12AP-584, 2013-Ohio-1909, ¶ 42. The jury may consider conflicting testimony from a witness in determining credibility and the persuasiveness of the account by either discounting or otherwise resolving the discrepancies. *State v. Taylor*, 10th Dist. No. 14AP-254, 2015-Ohio-2490, ¶ 34, *citing Midstate Educators Credit Union, Inc. v. Werner*, 175 Ohio App.3d 288, 2008-Ohio-641, ¶ 28 (10th Dist.). "'The finder of fact can accept all, part or none of the testimony offered by a witness, whether it is expert opinion or eyewitness fact, and whether it is merely evidential or tends to prove the ultimate fact.'" *State v. Petty*, 10th Dist. Franklin No. 15AP-950, 2017-Ohio-1062, ¶ 63, *quoting State v. Mullins*, 10th Dist. No. 16AP-236, 2016-Ohio-8347, ¶ 39.

{¶68}  A reviewing court must bear in mind that credibility generally is an issue for the trier of fact to resolve. *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. Murphy*, 4th Dist. Ross No. 07CA2953, 2008–Ohio–1744, ¶ 31. Because the trier of fact sees and hears the witnesses and is particularly competent to decide whether, and to what extent, to credit the testimony of particular witnesses, the appellate court must afford substantial deference to its determinations of credibility. *Barberton v. Jenney*, 126 Ohio St.3d 5, 2010–Ohio–2420, 929 N.E.2d 1047, ¶ 20. In other words, "[w]hen there

exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. Mahoning No. 99 CA 149, 2002–Ohio–1152, at ¶ 13, *citing State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125 (7th Dist. 1999). Thus, an appellate court will leave the issues of weight and credibility of the evidence to the fact finder, as long as a rational basis exists in the record for its decision. *State v. Picklesimer*, 4th Dist. Pickaway No. 11CA9, 2012–Ohio–1282, ¶ 24.

{¶69} We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. To the contrary, the jury appears to have fairly and impartially decided the matters before them. The jury heard the witnesses, evaluated the evidence, and was convinced of Berry's guilt.

{¶70} Upon review of the entire record, weighing the evidence and all reasonable inferences as a thirteenth juror, including considering the credibility of witnesses, we cannot reach the conclusion that the trier of facts lost its way and created a manifest miscarriage of justice. While Berry is certainly free to argue that the witnesses were either mistaken or lying, on a full review of the record we cannot say that the jury clearly lost its way or created a manifest injustice by choosing to believe the testimony of the state's witnesses. The jury was able to observe the witnesses, including D.L. and A.M., subject to cross-examination, as well as hear Berry's attorney's arguments concerning the lack of physical evidence and the opportunity for a mistaken identification.

{¶71} Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the

crimes for which Berry was convicted. We do not find that the jury disregarded or overlooked compelling evidence that weighed against conviction on any of the charges.

{¶72} Berry's sole Assignment of Error is overruled.

{¶73} The judgment of the Stark County Court of Common Pleas is affirmed.

By Gwin, J.,

Delaney, P.J., and

Baldwin, J., concur