[Cite as *State v. Anderson*, 2024-Ohio-3181.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | Hon. John W. Wise, J.<br>Hon. Andrew J. King, J. |
| -vs- | |
| | Case No. 2023 CA 0050 |
| DWAYNE ANDERSON | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:     Criminal Appeal from the Court of Common
Pleas, Case No. 2023 CR 217R


JUDGMENT:     Affirmed in Part; Reversed in Part
and Remanded


DATE OF JUDGMENT ENTRY:     August 20, 2024


APPEARANCES:

For Plaintiff-Appellee     For Defendant-Appellant

JODIE SCHUMACHER     DARIN AVERY
PROSECUTING ATTORNEY     105 Sturges Avenue
MARTIN I. NEWMAN     Mansfield, Ohio  44903
ASSISTANT PROSECUTOR
38 South Park Street
Mansfield, Ohio  44902

*Wise, J.*

**{¶1}** Appellant Dwayne Anderson appeals his conviction and sentence on one count of Trafficking in Cocaine and one count of Possession of Cocaine, entered in the Richland County Common Pleas Court following a jury trial.

**{¶2}** Appellee is the state of Ohio.

<u>STATEMENT OF THE FACTS AND CASE</u>

**{¶3}** For purposes of this Opinion, the relevant facts and procedural history are as follows:

**{¶4}** On February 15, 2023, Albert Cranor, a United States Postal Inspector, reviewed a package sent from Houston, Texas, with a destination of Bowman Street in Mansfield, Richland County, Ohio. The package was addressed to "Richard Mitchal". Inspector Cranor testified that "almost 100 percent of the time" individuals have drugs mailed to them using a name different than their own. (T. at 61). Further, the name "Richard Mitchell" [sic] was not associated with the mailing address on Bowman. (T. at 62-63).

**{¶5}** The Inspector found the package to be suspicious and had Deputy Michael Twombly and his drug trained K-9, Attila, inspect the package. Attila alerted on the package and the Inspector obtained a search warrant to open the package. After obtaining the search warrant, Inspector Cranor found 2 kilograms of cocaine hidden in two hollowed out books inside the package. The value of this cocaine was approximately $75,000 - $80,000. (T. at 151).

**{¶6}** Postal Inspector Cranor, who was working with detectives in the METRICH Drug Unit in Mansfield, Ohio, set up a controlled delivery of 99.03 grams of the cocaine

along with 2 kilograms of fake cocaine, using the original packaging. Inspector Cranor dressed as a postal delivery person and delivered the package to the intended address on Bowman Street in Mansfield, where METRICH had already set up surveillance.

{¶7}    In addition to the drugs, the controlled delivery package also contained a GPS tracker, as well as sensors, which could determine whether the package was being moved and/or opened.

{¶8}    On February 17, 2023, at approximately 11:31 a.m., the package containing the cocaine and the sensors was delivered to the front door of the Bowman Street address while several undercover officers watched from unmarked vehicles. (T. at 68).

{¶9}    Officers knew this property as the residence of Christopher Samuel, who is the cousin of Defendant-Appellant Dwayne Anderson, who did not live at that address.

{¶10}  Prior to arriving at that address, at 12:15 p.m., Defendant-Appellant missed a call from Guadalajara, Mexico, but at 12:23 p.m. Defendant-Appellant returned the call and made contact with that number. One minute later, at 12:24 p.m., Dwayne Anderson called Christopher Samuel, who then came out of the residence at approximately 12:25 p.m. and took the package inside but did not open it. (T. at 130).

{¶11}  At 2:46 p.m. Defendant-Appellant Anderson arrived at the premises, parked in front of the property, and according to the sensors, moved the package. The sensors then alerted that the package was opened at 2:49 p.m. (T. at 131).

{¶12}  The officers, who had previously obtained a search warrant for the home, executed the search warrant once they received the alert that the box had been opened. As Defendant-Appellant saw the officers approaching, he opened the door to let them in. Officers located the open box with the drugs stacked on top on the arm of the couch. (T.

at 139). The bricks of cocaine and the packaging had been removed from the box, but the plastic wrap around the bricks had not been opened. (T. at 140-141). In addition to the fake cocaine, 99.03 grams of cocaine were recovered. (T. at 143).

{¶13} Defendant-Appellant admitted that the owner of the property, Mr. Samuel, did not have anything to do with the package and that the package belonged to him. While searching Defendant-Appellant's vehicle, the police also found an unloaded firearm.

{¶14} Defendant-Appellant was questioned by the officers later that day. Defendant-Appellant admitted that he previously talked to "Eric" in Houston, Texas, and provided his address to him. During the interview Defendant-Appellant admitted that the package was "probably a bad package," and "like some form of, of drug." (See Statement of Dwayne Anderson, at 3). He admitted to opening the box but stated that he did not open the packages contained inside. He further stated that he went to the house because "It - I told him, uh, uh, guy said it was some package coming today or something." (Statement, at 5). Defendant-Appellant explained that upon receiving the package, he was to call "Eric" and Eric's cousin would "probably come on Bowman," to get the package. (Statement, at 8).

{¶15} On March 22, 2023, Defendant-Appellant Dwayne Anderson was indicted on one count of (Count One) Trafficking in Cocaine, in violation of R.C. §2925.03(A)(2), with a 1-year Firearm Specification, a Firearm Forfeiture Specification, and a Major Drug Offender Specification; and one count of (Count Two) Possession of Cocaine, in violation of R.C. §2925.11(A) &(C)(4)(f), with a 1-year Firearm Specification, a Firearm Forfeiture Specification, and a Major Drug Offender Specification.

{¶16} A jury trial was held in this matter on July 31, 2023, August 1, 2023 and August 2, 2023.

{¶17} Following deliberations, the jury found Defendant-Appellant guilty of Trafficking in Cocaine with a Major Drug Offender specification, but found him not guilty of both firearm specifications. The jury also found Defendant-Appellant guilty of Possession of Cocaine but not guilty on the firearm specifications.

{¶18} On August 30, 2023, at the sentencing, the trial court merged counts one and two and Defendant-Appellant was sentenced to 11 to 16 ½ years in prison and 2-5 years of mandatory Post-Release Control.

{¶19} Appellant now appeals, raising the following errors for review:

<u>ASSIGNMENTS OF ERROR</u>

{¶20} "I. THE TRIAL COURT ERRONEOUSLY CONVICTED ANDERSON OF VIOLATING R.C. 2925.11(A) & (C)(4)(F).

{¶21} "II. THE TRIAL COURT ERRED BY DENYING ANDERSON'S CRIM.R. 29 MOTION FOR ACQUITTAL.

{¶22} "III. THE JURY'S VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶23} "IV. THE STATE DID NOT PROVIDE A BILL OF PARTICULARS IN RESPONSE TO ANDERSON'S TIMELY REQUEST.

{¶24} "V. ANDERSON RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL.

{¶25} "VI. R.C. 2925.03 AND R.C. 2925.11 ARE UNCONSTITUTIONAL AS APPLIED AND VOID FOR FAILING TO GIVE FAIR WARNING."

**I.**

**{¶26}** In his first assignment of error Appellant argues he was erroneously convicted of R.C. §2925.11(A) & (C)(4)(f). We agree.

**{¶27}** Appellant herein was charged with a violation of R.C.§ 2925.11(A) and (C)(4)(f) Drug Possession Offenses, which provides, in relevant part:

(A) No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog.

***

(C) Whoever violates division (A) of this section is guilty of one of the following:

***

(4) If the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates division (A) of this section is guilty of possession of cocaine. The penalty for the offense shall be determined as follows:

***

(e) If the amount of the drug involved equals or exceeds twenty-seven grams but is less than one hundred grams of cocaine, possession of cocaine is a felony of the first degree, and the court shall impose as a mandatory prison term a first degree felony mandatory prison term.

(f) If the amount of the drug involved equals or exceeds one hundred grams of cocaine, possession of cocaine is a felony of the first degree, the offender is a

major drug offender, and the court shall impose as a mandatory prison term a maximum first degree felony mandatory prison term.

**{¶28}** Appellant herein argues that the trial court found that he was guilty of possessing "an amount *** exceed[ing] one hundred grams of cocaine" in violation of R.C. §2925.11(C)(4)(f) but that the jury found that he possessed "less than 100 grams", a violation of R.C. §2925.11(A) & (C)(4)(e). (T. at 244).

**{¶29}** Upon review, we find that the jury found Appellant "guilty of the crime of possession of cocaine … in an amount equal to or exceeding 50 grams but less than 100 grams", a violation of R.C. §2925.11(A) & (C)(4)(e).

**{¶30}** However, a review of the record shows a clerical error in the trial court's Sentencing Entry, the trial court found:

That the defendant has been convicted of:

Count 1: Trafficking in Cocaine, a violation of RC. 2925.03(A)(2&(C)(4)(g), a felony of the first degree

Count 2: Possession of Cocaine, a violation of R.C. 2925.11 (A)&(C}(4)(f), a felony of the first degree

**{¶31}** (Sent. Entry at 2).

**{¶32}** However, the trial court did not sentence Appellant on R.C. §2925.11(A) & (C)(4)(f) because it merged this charge with the charge of Trafficking in Cocaine, and imposed sentence only on the Trafficking charge.

**{¶33}** Trial courts retain jurisdiction to correct clerical errors in judgment entries so that the entries accurately reflect the trial court's decision. *State ex rel. Cruzado v. Zaleski*, 2006-Ohio-5795, ¶ 19. Crim.R. 36 provides that "[c]lerical mistakes in judgments,

orders, or other parts of the record, and errors in the record arising from oversight or omission, may be corrected by the court at any time." Clerical mistakes refer to mistakes or omissions that are "mechanical in nature and apparent on the record" and do not address a legal decision or judgment. *State v. Brown*, 2000-Ohio-1660.

**{¶34}** Accordingly, under these circumstances, the trial court may remedy the error by issuing a *nunc pro tunc* judgment entry which reflects the jury's finding.

**{¶35}** Appellant's first assignment of error is sustained.

### II., III.

**{¶36}** In his second and third assignments of error, Appellant argues that his convictions are against the manifest weight and sufficiency of the evidence. We disagree.

**{¶37}** Appellant argues his conviction is supported by insufficient evidence. The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 1997-Ohio-52, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

**{¶38}** Appellant argues that the trial court erred when it denied his Crim.R. 29 motion for acquittal. Pursuant to Crim.R. 29(A), a court "shall order the entry of the judgment of acquittal of one or more offenses * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." Because a Crim.R. 29 motion questions the sufficiency of the evidence, "[w]e apply the same standard of review to Crim.R. 29 motions as we use in reviewing the sufficiency of the evidence." Whether the evidence is legally sufficient to sustain a verdict is a question of law. *Id.* at ¶ 38, *citing State v. Thompkins*, *supra*. "Sufficiency is a test of adequacy." *Id.* "We construe the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt." *Id.*, *citing State v. Jenks*, paragraph two of the syllabus.

**{¶39}** Appellant also argues his conviction is against the manifest weight of the evidence. In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, *supra*. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

**{¶40}** Upon a challenge to the weight of the evidence, the issue is whether the jury created a manifest miscarriage of justice in resolving conflicting evidence, even

though the evidence of guilt was legally sufficient. *State v. Ashcraft*, 2023-Ohio-2378, ¶ 14 (5th Dist), *citing State v. Thompkins*, at 386–387. "Weight of the evidence" addresses the evidence's effect of inducing belief. *State v. Thompkins*, *supra*, *State v. Williams*, 2003-Ohio-4396, ¶ 83. When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the fact finder's resolution of the conflicting testimony. *Thompkins* at 387, *citing Tibbs v. Florida*, 457 U.S. 31, 42, (1982) (quotation marks omitted); *State v. Wilson,* 2007-Ohio-2202, ¶ 25, *citing Thompkins.*

**{¶41}** Once the reviewing court finishes its examination, an appellate court may not merely substitute its view for that of the jury, but must find that " 'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Thompkins* at 387, *quoting State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). The Ohio Supreme Court has emphasized: " '[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *.' " *Eastley v. Volkman,* 2012-Ohio-2179, *quoting Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984), fn. 3, *quoting* 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191–192 (1978).

**{¶42}** Appellant herein is challenging his convictions for Trafficking in Cocaine, in violation of R.C. §2925.03(A)(2)&(C)(4)(g), and Possession of Cocaine, in violation of R.C. §2925.11(A)&(C)(4)(f), which provide in relevant part,

**{¶43}** **R.C. § 2925.03 TRAFFICKING** OFFENSES

(A) No person shall knowingly do any of the following:

(1) ***

(2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person.

***

(C) Whoever violates division (A) of this section is guilty of one of the following:

***

(4) If the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates division (A) of this section is guilty of trafficking in cocaine. The penalty for the offense shall be determined as follows:

***

(g) If the amount of the drug involved equals or exceeds one hundred grams of cocaine and regardless of whether the offense was committed in the vicinity of a school, in the vicinity of a juvenile, or in the vicinity of a substance addiction services provider or a recovering addict, trafficking in cocaine is a felony of the first degree, the offender is a major drug offender, and the court shall impose as a mandatory prison term a maximum first degree felony mandatory prison term.

**{¶44}  R.C. § 2925.11 DRUG POSSESSION OFFENSES**

(A) No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog.

\*\*\*

(C) Whoever violates division (A) of this section is guilty of one of the following:

\*\*\*

(4) If the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates division (A) of this section is guilty of possession of cocaine. The penalty for the offense shall be determined as follows:

\*\*\*

(e) If the amount of the drug involved equals or exceeds twenty-seven grams but is less than one hundred grams of cocaine, possession of cocaine is a felony of the first degree, and the court shall impose as a mandatory prison term a first degree felony mandatory prison term.

(f) If the amount of the drug involved equals or exceeds one hundred grams of cocaine, possession of cocaine is a felony of the first degree, the offender is a major drug offender, and the court shall impose as a mandatory prison term a maximum first degree felony mandatory prison term.

**{¶45}**  The jury was also provided with an instruction as to Complicity, under R.C. §2923.03(F), which states:

(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:

(1) Solicit or procure another to commit the offense;

(2) Aid or abet another in committing the offense;

(3) Conspire with another to commit the offense in violation of section 2923.01 of the Revised Code;

(4) Cause an innocent or irresponsible person to commit the offense.

***

(F) Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender. A charge of complicity may be stated in terms of this section, or in terms of the principal offense.

**{¶46}** Appellant herein argues that the State presented no evidence that he personally "[p]repare[d] for shipment, ship[ped], transport[ed], deliver[ed], prepare[ed] for distribution, or distribute[d] a controlled substance or a controlled substance analog ***" or that he aided or abetted another is so doing.

**{¶47}** Appellant concedes that the State presented evidence that in his statement to the police, he admitted the he aided and abetted another in shipping cocaine by providing his cousin Chris Samuel's address to Eric. Appellant argues, however, that in his statement he did not indicate where he was when he transmitted Samuel's address to Eric, and therefore there was no proof that he committed the act in Richland County.

**{¶48}** Upon review, we find the state presented sufficient evidence of complicity to trafficking in cocaine in this matter. As set forth above, Appellant provided Samuel's

address as a place to ship the cocaine, engaged in telephone calls to Mexico and with "Eric" for the purpose of tracking the package, called his cousin to retrieve the package from the front steps, and went to the Bowman Street address and collected/took possession of the package and opened it within three minutes of arriving at the address.

**{¶49}** Appellant also argues that he had no knowledge of what was inside the package.

**{¶50}** R.C. §2901.22 defines "knowingly" as follows:

**{¶51}** (B) A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.

**{¶52}** Whether a person acts knowingly can only be determined, absent a defendant's admission, from all the surrounding facts and circumstances, including the doing of the act itself." *State v. Johnson*, 56 Ohio St.3d 35, (1978) *citing State v. Huffman*, 131 Ohio St. 27 (1936): *State v. Rojas*, 64 Ohio St.3d 131, 139 (1992); State *v. Huff*, 145 Ohio App.3d 555, 563, (1st Dist. 2001). (Footnote omitted.) Thus, "[t]he tests for whether a defendant acted knowingly is a subjective one, but it is decided on objective criteria." *Id. citing State v. Adams*, 4th Dist. Ross No. 94 CA 2041, 1995 WL 360247(June 8, 1995) and *State v. Paidousis*, Franklin No. 00AP–118 (10th Dist. 2001). *See also, State v. Butler*, 2012-Ohio-5030, ¶ 25.

**{¶53}** Circumstantial evidence is that which can be "inferred from reasonably and justifiably connected facts." *State v. Fairbanks*, 32 Ohio St.2d 34 (1972), paragraph five of the syllabus. Circumstantial evidence inherently possesses the same probative value

as direct evidence. *State v. Lott*, 51 Ohio St.3d 160, 167 (1990); *see also State v. Treesh*, 90 Ohio St.3d 460, 485 (5th Dist.); *Hinerman v. Grill on Twenty First, L.L.C.*, 2021-Ohio-859 ¶ 88 (5th Dist.). Moreover, "[a] conviction can be sustained based on circumstantial evidence alone." *State v. Franklin*, 62 Ohio St.3d 118 (1991).

**{¶54}** Here, the jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the trier of fact may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." Indeed, the trier of fact need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver*, 2003-Ohio-958, ¶ 21 (10th Dist.), *citing State v. Antill,* 176 Ohio St. 61, 67 (1964); *State v. Burke*, 2003-Ohio-2889 (10th Dist). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks*, 61 Ohio St.3d 259, 272 (1991), paragraph one of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102 (1997).

**{¶55}** We find that this is not an " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins*, 78 Ohio St.3d 380 at 386–387, *quoting Martin*, 20 Ohio App.3d at 175. Upon review of the entire record, weighing the evidence and all reasonable inferences as a thirteenth juror, including considering the credibility of witnesses, we cannot reach the conclusion that the trier of fact lost its way and created a manifest miscarriage of justice. We do not find the jury erred when it found Appellant guilty of trafficking and possession of cocaine. Taken as a whole, the testimony and record

contains ample evidence of Appellant's responsibility for the crime. The state presented testimony and evidence from which the jury could have found all the essential elements of the offenses proven beyond a reasonable doubt.

**{¶56}** Appellant's second and third assignments of error are overruled.

**IV.**

**{¶57}** In his fourth assignment of error, Appellant argues that the state of Ohio failed to provide Appellant with a bill of particulars. We disagree.

**{¶58}** Appellant asserts that the prosecutor's failure to provide "a bill of information [sic.]" prejudiced him because it deprived him of understanding the nature of the charged offenses. More specifically, Appellant contends the state's failure to provide a bill of particulars prejudiced him because the counts in the indictment did not "clearly indicate to Anderson the 'nature and cause of the accusation[s,].'"

**{¶59}** Our review of the record reveals that Appellant filed a request for a bill of particulars on April 6, 2023, but the state failed to furnish Appellant with a bill of particulars notwithstanding such request.

**{¶60}** Crim.R. 7(E) states:

**Bill of Particulars**. When the defendant makes a written request within twenty-one days after arraignment but not later than seven days before trial, or upon court order, the prosecuting attorney shall furnish the defendant with a bill of particulars setting up specifically the nature of the offense charged and of the conduct of the defendant alleged to constitute the offense. A bill of particulars may be amended at any time subject to such conditions as justice requires.

**{¶61}** The purpose of a bill of particulars is to state specifically the nature of the offense charged so that the accused has an adequate opportunity to prepare a defense; it is not for the purpose of revealing the state's evidence. *State v. Haynes,* 2022-Ohio-4473, ¶ 22, 23. *See also, Foutty v. Maxwell*, 174 Ohio St. 35, 38 (1962); *State v. DeRighter*, 145 Ohio St. 552, 556 (1945).

**{¶62}** The Supreme Court in *State v. Haynes*, 2022-Ohio-4473, did not clearly tell us that the failure to provide a bill of particulars is "so intrinsically harmful as to require automatic reversal (i.e., 'affect substantial rights') without regard to their effect on the outcome." [*State v. Jones*, 2020-Ohio-3051, ¶ 17-18], quoting *State v. Hill*, 92 Ohio St.3d 191, 196 (2001), quoting *Neder v. United Sta*tes, 527 U.S. 1, 7 (1999)." *State v. Bond*, 2022-Ohio-4140, ¶ 7. In fact, the *Haynes* Court conceded that, "Not every case requires a bill of particulars. Sometimes an indictment tells a defendant all the defendant needs to know to understand exactly what is alleged." 2022-Ohio-4473, ¶ 26.

**{¶63}** Of importance to the decision in *Haynes*, Haynes *was convicted for acts occurring on a date that was not originally alleged in the indictment.* The indictment originally alleged the acts forming the basis of the charges occurred between December 21 to December 27, 2017. *Haynes,* ¶ 10. On the morning of trial, the state amended the indictment to include December 19, 2017. *Id.* In closing, the state argued that Haynes abducted the children when he picked them up on December 19, 2017, and "used force when he buckled the children into their car seats and that he also used force in the sense that a child does not realistically have any ability to resist when a grandparent decides to take him somewhere." *Id.* at ¶ 14. Hanes was convicted for the December 19, 2017 incident. *Id.* at ¶ 14-15. Haynes argued he did not have a reasonable opportunity to

prepare his defense to the allegations concerning December 19, 2017 made for the first time on the morning of trial. *Id.* at ¶ 15.

**{¶64}** The takeaway from *Haynes* is that, where an indictment, although sufficient to charge an offense under Crim.R. 7(B), is wanting in particularity, or the language is vague and indefinite so as not to give the defendant a reasonable opportunity to prepare his defense, the failure to provide a bill of particulars is reversable error. *See, Haynes,* 2022-Ohio-4473, ¶ 25; 27; 28. We do not believe that the Ohio Supreme Court's decision in *Haynes* can be read as holding that the failure to provide a bill of particulars so undermines the fairness of a criminal proceeding as a whole that even preserved error requires reversal without regard to the mistake's effect on the proceeding. *See, Arizona v. Fulminante*, 499 U.S. 279, 309–310 (1991) (giving examples). In other words, we do not read *Haynes* as holding that we may presume prejudice in every case in which the state fails to file a bill of particulars. *See, State v. Swogger,* 2018-Ohio-3148, ¶ 46 (5th Dist.); *United States v. Dominguez Benitez*, 542 U.S. 74 (2004).

**{¶65}** In the case at bar, the state's failure to provide a bill of particulars when requested is undoubtably error; however, we must determine whether it is reversable error. To do that we must first determine the appropriate standard for our review. The question now becomes, is our review for "plain error,"

> And recently, we reiterated that "the plain-error rule * * * applies to errors that were never objected to at trial, even if those errors can be classified as structural." *State v. McAlpin*, 169 Ohio St.3d 279, 2022-Ohio-1567, 204 N.E.3d 459, ¶ 66; *see also State v. West*, 168 Ohio St.3d 605, 2022-Ohio-1556, 200 N.E.3d 1048, ¶ 28 ("assertions of structural error do

not preclude an appellate court from applying the plain-error standard when the accused has failed to object")

…

We conclude that Garrett's failure to make a contemporaneous objection to the trial court's decorum order excluding all minors under the age of 18 from the courtroom forfeited all but plain error.

**{¶66}** *State v. Garrett,* 2022-Ohio-4218, ¶ 49.

**{¶67}** Or, do we review the failure to provide a bill of particulars under a harmless error analysis,

The main distinction between plain-error review, which is the standard employed when a defendant failed to object at trial, and harmless-error review, which is employed when a defendant did object, is the party that bears the burden. *See State v. Jones*, 160 Ohio St.3d 314, 2020-Ohio-3051, 156 N.E.3d 872, ¶ 17-18. Under plain-error review, the defendant bears the burden to demonstrate the requirements for review whereas under harmless-error review, the state bears the burden to demonstrate that the error did not affect the defendant's substantial rights. *Id.* at ¶ 17, 18.

**{¶68}** *State v. Bond*, 2022-Ohio-4150, ¶ 7.

**{¶69}** The Ohio Supreme Court in *Haynes* suggested that we review the failure to provide a bill of particulars when requested by the defendant under the "harmless error" review, with the state carrying the burden to demonstrate that the error was harmless beyond a reasonable doubt,

{¶70} If the state would like us to rule that under Crim.R. 52(A), the state's intentional failure to comply with the Constitution and Crim.R. 7(E) was harmless, then the state must show that it was "harmless beyond a reasonable doubt," *Chapman v. California*, 386 U.S. 18, 24 (1967) (observing that the burden of proving harmlessness is on the beneficiary of the error and that harmlessness must be proved beyond a reasonable doubt). It has not done so here.

{¶71} *Haynes,* 2022-Ohio-4473, ¶ 25. *Accord, State v. Demarco,* 31 Ohio St.3d 191, 195 (1987); *State v. Rahman,* 23 Ohio St.3d 146 (1986); *State v. Aeschilmann*, 2014-Ohio-4462, ¶ 95 (5th Dist.).

{¶72} The state has a mandatory obligation to provide the bill of particulars; it is not dependent upon the defendant filing a motion to compel with the trial judge. If the state, whether through misfeasance, malfeasance, or simple negligence, fails to fulfil its duty, it is error. It is proper, therefore, to place the burden of proving harmlessness on the state even if the defendant did not file a motion to compel in the trial court.

{¶73} In order to sustain a conviction, a reviewing court must be able to declare a belief that the error is "harmless beyond a reasonable doubt, did not have an impact on the jury, or did not contribute to appellant's conviction in any meaningful degree." *State v. Rahman,* 23 Ohio St.3d 146,151(1986). We have no trouble finding that the state has shown the failure to provide a bill of particulars when requested was, under the facts of this case, harmless beyond a reasonable doubt.

{¶74} First, we note that Appellant does not even allege that the failure to provide a bill of particulars contributed to his conviction in any meaningful degree, impacted the jury's verdict, or that the outcome of the trial would have been different had he received

a bill of particulars. Appellant vaguely argues that he could have expected a dismissal based on venue, lack of knowledge, and the weight of the drugs being less than 100 grams as alleged in the indictment. *See, Appellant's brief* at 16-17. However, he made a Crim.R. 29 motion on those very grounds at the conclusion of the state's case-in-chief. *See*, *Appellant's brief* at 7; 11-12.

{¶75} Originally the package contained two kilograms of cocaine. *See, Appellee's brief* at 8; *Appellant's brief* at 9. The record does not disclose the authority's reasons for removing all but 99.3 grams of the cocaine from the original package before delivering it to the home. However, the weight of the drugs does not affect the substantive offense of trafficking under R.C. §2925.03(A)(2); rather, it effects only the penalty. *See*, R.C. §2925.03(C)(4)(a) – (g). The same is true for drug possession cases. *See,* R.C. §2925.11(A) / (C)(4)(a) – (f). It was to Appellant's benefit that the state failed to prove the amount of the drugs was 100 grams or more. We find beyond a reasonable doubt that the fact the state proved the cocaine was less than 100 grams did not contribute to his conviction in any meaningful degree, impact the jury's verdict, or affect the outcome of the trial. The result would have been the same had he received a bill of particulars.

{¶76} Further, Appellant could suffer no prejudice from the trial judge instructing the jury on complicity because he already knew the state could seek a complicity instruction from the trial judge. R.C. §2923.03(F) states, "A charge of complicity may be stated in terms of this section, or in terms of the principal offense." "The Supreme Court of Ohio clarified Ohio's position on the issue of complicity in *State v. Perryman*, 49 Ohio St.2d 14 (1976), *vacated in part on other grounds sub nom, Perryman v. Ohio,* 438 U.S. 911 (1978). The court unequivocally approved of the practice of charging a jury regarding

aiding and abetting even if the defendant was charged in the indictment as a principal. *Id.* The court held that the indictment as principal performed the function of giving legal notice of the charge to the defendant. *Id.* Therefore, if the facts at trial reasonably supported the jury instruction on aiding and abetting, it is proper for the trial judge to give that charge. *Perryman, supra* at 27, 28." *State v. Payton*, 1990 WL 48952 (8th Dist. Apr 19, 1990), at *8; *State v. Berry*, 2024-Ohio-923, ¶ 36 (5th Dist.). Accordingly, the fact that the trial judge could instruct the jury on complicity was readily foreseeable by Appellant even without a bill of particulars.

{¶77} Appellant's defense was that there was no evidence that any event alleged to have been done by him was committed in Richland County [*See, Appellant's brief* at 11-12] and, further, he did not know what was inside the package. [*See, Appellant's brief* at 12-13; 14-15]. Appellant concedes that "he should have known any conviction would have to have arisen from a complicity argument…" Appellant's brief at 16.

{¶78} We find beyond a reasonable doubt that the indictment informed Appellant all he needed to know to understand exactly what was alleged. The result of the trial would have been the same had he received a bill of particulars.

{¶79} Accordingly, we find that the state has proven beyond a reasonable doubt that, in this specific case, the state's failure to fulfill its mandatory duty to provide a bill of particulars when requested, was harmless beyond a reasonable doubt, did not have an impact on the jury, and did not contribute to Anderson's conviction in any meaningful degree.

{¶80} Appellant's fourth assignment of error is overruled.

**V.**

**{¶81}** In his fifth assignment of error, Appellant argues that he received ineffective assistance of counsel. We disagree.

**{¶82}** To succeed on a claim of ineffectiveness, a defendant must satisfy a two-prong test. Initially, a defendant must show that trial counsel acted incompetently. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). In assessing such claims, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Id.* at 689, *citing Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158 (1955).

**{¶83}** "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at 689. The question is whether counsel acted "outside the wide range of professionally competent assistance." *Id.* at 690.

**{¶84}** Even if a defendant shows that counsel was incompetent, the defendant must then satisfy the second prong of the *Strickland* test. Under this "actual prejudice" prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

**{¶85}** In determining a claim of ineffective assistance of counsel, our review is limited to the record before us. *State v. McCauley*, 2017-Ohio-4373, ¶ 21 (5th Dist.), *citing State v. Prophet*, 2015-Ohio-4997, ¶ 32 (10th Dist.).

{¶86} Appellant first argues that his trial counsel was ineffective in failing to file a motion to compel a bill of particulars. Having found that such failure constituted harmless error, we find Appellant fails to meet the second prong under *Strickland*.

{¶87} Appellant also argues his trial counsel was ineffective because his counsel did not know the *mens rea* for complicity on the day before trial. However, counsel educated himself as to the culpable mental state prior to trial. Appellant has failed to show how such affected the outcome of the trial or how a bill of particulars would have aided in his defense.

{¶88} The Supreme Court held in *State v. Haynes*, 2022-Ohio-4473, that "the state must provide a bill of particulars on a defendant's request, even when the prosecutor believes that the defendant is able to glean the nature and cause of the accusation against him from the discovery the state provided or from some other source. *Haynes* at ¶26. It is undisputed that Appellant requested a bill of particulars and the State failed to provide one.

{¶89} Finally, with regard to the prospect that his counsel would have possibly negotiated a plea or prepared a different defense amounts to vague speculation. Because we cannot consider information outside the record in a direct appeal, we must often conclude that a defendant's claims are speculative. *State v. Bunch*, 2022-Ohio-4723. Speculation alone cannot overcome "the 'strong presumption' that counsel's performance constituted reasonable assistance." *State v. Powell,* 2012-Ohio-2577 (stating that an argument that is purely speculative cannot serve as the basis for an ineffectiveness claim).

{¶90}  Based on the foregoing, we cannot find a reasonable probability that the proceedings would have been different. For the foregoing reasons, we find Appellant's counsel did not render ineffective assistance.

{¶91}  Appellant's fifth assignment of error is overruled.

**VI.**

{¶92}  In his sixth assignment of error, Appellant argues that R.C. §2925.03 and R.C. §2929.11 are unconstitutional as applied and vague. We disagree.

{¶93}  Appellant argues that the statutes violate due process and ex post facto clauses of the Ohio and U.S. Constitutions.  Appellant argues that "judicial enlargement" has caused these statutes to become so "broad as to give no fair warning of the degree of liability to which one is exposed for violating them." (Appellant's Brief at 19).

{¶94}  An as applied challenge asserts that a statute is unconstitutional as applied to the challenger's particular conduct. *Kruppa v. Warren,* 2009-Ohio-4927*, ¶*12 (11th Dist.) In contrast, a facial-vagueness challenge asserts the statute is vague in all of its applications. *Id.* This means the legislation does not provide a definitive standard by which to determine what is required under the law*. Id.* A facial-vagueness challenge asserts that a law is unconstitutional as applied to the hypothetical conduct of a third party and without regard to the challenger's specific conduct. *Id.*

{¶95}  "Legislative enactments are afforded a strong presumption of constitutionality." *State v. Smith*, 2017-Ohio-359, ¶ 28 (9th Dist.). "[I]f at all possible, statutes must be construed in conformity with the Ohio and United States Constitutions." *State v. Collier*, 62 Ohio St.3d 267, 269 (1991). "A party asserting that a statute is unconstitutional must prove that the statute is unconstitutional beyond a reasonable

doubt." *Smith* at ¶ 28. "The failure to challenge the constitutionality of a statute in the trial court forfeits all but plain error on appeal, and the burden of demonstrating plain error is on the party asserting it." *State v. Quarterman*, 2014-Ohio-4034, ¶ 2.

{¶96} In this case, the record reflects that Appellant never challenged the constitutionality of R.C. §2925.03 or R.C. §2925.11 in the trial court. He, therefore, forfeited his arguments save for a claim of plain error. Appellant has not developed a claim of plain error, however, and this Court will not construct an argument on his behalf. *See State v. Boatright*, 2017-Ohio-5794, ¶ 8 (9th Dist.).

{¶97} Accordingly, Appellant's sixth assignment of error is overruled.

{¶98} Having sustained Appellant's first assignment of error, the trial court's judgment of conviction will be reversed and remanded solely for the trial court to issue a *nunc pro tunc* judgment entry to correct the clerical error in the sentencing entry. In all other respects, the judgment of conviction is affirmed.

By: Wise, J.

Gwin, P. J., concurs.

King, J., concurs in part and dissents in part.

JWW/kw

*King, J. concurs in part, dissents in part,*

{¶99}   I join with the majority in its resolution of all assignments of error with the exception of assignment of error four. Recently, in *State v. Haynes*, 2022-Ohio-4473, the Supreme Court of Ohio considered the failure of the prosecuting attorney to provide a bill of particulars and concluded it was reversible error. As a Court superior to us, we must give effect to its holding until such time as it elects to overrule that holding. Because I conclude we are bound to apply *Haynes* here and thus return this matter to the trial court, I am obligated to dissent.

{¶100} I agree with the opinion of this court that *Haynes* was explicit in holding that a defendant has the right to receive the bill of particulars and the state is obligated to provide it. *Haynes* at ¶ 22. So too do I agree that the next step requires us to consider whether the error in not providing the bill here was harmless.

{¶101} In the state's appellate brief, one of the arguments is that the Bill of Information would have provided no aid regarding the later complicity instruction. I agree with the state and the court's opinion; there is no error in this regard. The other argument is that on April 11, 2023, Anderson received full discovery, thus there is no error.  But this argument was rejected by the Supreme Court in *Haynes*. The argument there was framed in similar fashion to the one before us: "Despite that mandatory duty, the state, the trial court, and the intermediate court of appeals chose to rely on caselaw of intermediate courts of appeal holding that even though Crim.R. 7(E) plainly sets forth a mandatory duty to provide a bill of particulars, that duty evaporates when full discovery is provided." *Id.* at ¶ 22.

**{¶102}** The Supreme Court then responded to the appellate court holdings as follows: "Neither Article I, Section 10, of the Ohio Constitution nor Crim.R. 7(E) nor R.C. 2941.07 contain this exception. None of our decisions has endorsed such an exception. To the contrary, we have made clear that a bill of particulars is not the same thing as discovery and that discovery and a bill of particulars serve different purposes[.]" *Id.* at ¶ 23.

**{¶103}** It is obvious the Supreme Court views Crim.R. 7(E) as giving effect to Article 1, Section 10 of the Ohio Constitution. Thus, the right of the defendant to know and understand the charge sufficiently to mount a defense is at the heart of *Haynes. Id.* at ¶ 18. Where we lack clarity is what to do when a bill is requested but not provided.

**{¶104}** *Haynes* did not appear to give any consideration to the outcome of the case or the quality or quantity of the evidence generally. Indeed, it seemed to say the prejudice occurred prior to trial, thus implying the evidence at trial had limited or no value in its evaluation. *See Haynes*, 2022-Ohio-4473, at ¶ 22.[1] Under this district's prior formulation, a consideration of the discovery provided by the state could be weighed against the absence of a bill of particulars in concluding whether the error was outcome determinative. But that option is expressly foreclosed to us.

**{¶105}** In its place, this court found no prejudice after considering Anderson's arguments about the vagueness and inconsistency of the indictment against the evidence introduced at trial. But we must remember the Supreme Court has told us the purpose of Crim.R. 7(D) is to further a constitutional right, namely, "[i]n any trial, in any court, the

---

[1]Typically, reversible errors of this type are structural errors. *See State v. Perry*, 2004-Ohio-297, ¶ 17.

party accused shall be allowed . . . to demand the nature and cause of the accusation against him . . ." Ohio Const., art. I, § 10. To say that in every trial the accused has this right vindicated merely by the sufficient presentation of the state's evidence falls short of protecting this right as outlined in *Haynes*. For a criminal defendant, this is the equivalent of a car buyer being told of all the car's defects that are out of warranty as the buyer is driving off the lot. A lot of good that notice did.

{¶106} To be sure, *Haynes* itself does not make clear how reviewing courts are supposed to evaluate either the harm from the failure to provide the bill of particulars or what needs to be in an indictment in order for it to be a sufficient replacement for a bill of particulars. But I think *Haynes* established two things. First, we are explicitly barred from considering the provision of discovery as an acceptable substitute for a bill. Second, the showing of prejudice must be evaluated on something besides the evidence the state presented at trial.  So, the question remains, how do we review errors assigned to us? In my view, history suggests the resolution: we review the indictment and determine whether it fairly substitutes for the absence of the bill of particulars. See *State v. Petro*, 148 Ohio St. 473, 485 (1947) (holding the failure to provide the bill of particulars was prejudicial error when the time of death in the indictment was disputed by the coroner's report).

{¶107} It appears that in 1929, the General Assembly abrogated the common law to allow for short form indictments and bills of particulars. *State v. Collett*, 58 N.E.2d 417, 420 (2d Dist. 1944). Neither the Supreme Court in *Haynes* nor the parties before us supplied us with detailed history in this regard, but it appears this was a policy trade off made by the General Assembly. In such a case, we should not a hundred years later attempt to restrike the policy balance. *See* R.C. 1.11.

{¶108}        Our answer to the question of how to evaluate prejudice should be whether the indictment in this case serves as a substitute for the required-but-unprovided-for bill of particulars. I would conclude based on the arguments before us, the state failed to meet its burden to show the error was harmless. An examination of the indictment here suggests that while it is facially sufficient as an indictment, it lacks the kind of specificity a defendant ordinarily would be entitled to through a bill of particulars. If *Haynes* requires us to evaluate an indictment in this fashion, then the one before us cannot be fairly said to be a substitute for a bill of particulars.

{¶109}        Accordingly, the Supreme Court's precedent requires us to find reversible error and return this matter to the trial court. While I would respectfully suggest the Supreme Court give us and trial courts additional guidance in this area, our obligation is to carry out its holdings the best we can. So, for the reasons stated above I dissent.